[Doc. No. 35]

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

JANINE CONSTANTINO,      :
                   :
         Plaintiff,    :
                   :
         v.          :    Civil No. 13-6667 (RBK/JS)
                   :
CITY OF ATLANTIC CITY,   :
ET. AL,              :
                   :
                   :
         Defendants.  :
_____:

## OPINION

Plaintiff alleges that on July 21, 2012, she was assaulted by security personnel and Atlantic City police officers at Dusk nightclub in Atlantic City, New Jersey. She also alleges the security personnel and at least one police officer conspired to destroy relevant video evidence. This Opinion decides plaintiff's motion to amend and focuses on plaintiff's request to amend her complaint to substitute five (5) individuals for fictitious or John Doe parties named in the complaint. Unless plaintiff's amendment relates back to the filing date of the complaint, the amendment will be denied as futile as it is barred by the statute of limitations. The answer to the relation back question involves the interplay of Fed. R. Civ. P. 15(c)(1)(A) and (C), New Jersey Rules 4:26-4 and 4:9-3, and equitable concepts including equitable

estoppel, the discovery rule, and the doctrine of substantial compliance. For the reasons to be discussed, plaintiff's motion will be GRANTED in part and DENIED in part. The Court will grant plaintiff leave to name one additional individual but will deny the request as to the other four individuals.[1]

**<u>BACKGROUND</u>**

To put the subsequent legal discussion in context, a detailed discussion of the background facts is necessary. Plaintiff commenced this action on November 1, 2013, asserting claims pursuant to 42 U.S.C. § 1983 and New Jersey tort law against the City of Atlantic City, Police Officer Sterling Wheaten, Police Officer Joseph Garofalo, "unknown Atlantic City Police Officers", Dusk nightclub, Dusk Security Manager Ron Anisette, "unknown Dusk security personnel", Dusk Management Group, Caesar's Hotel and Casino, "unknown Caesar's Casino and Hotel security personnel", Caesar's Entertainment Corporation, AC Nightlife, LLC, Gary Veloric, Red Stripe Plane Group, "John Doe in plaid shirt", and various unknown persons and corporations. See generally Compl. [Doc. No. 1]. Plaintiff claims that on July 21, 2012 she was physically assaulted and falsely arrested by defendants Wheaten, Garofalo, and other unknown defendants as she attempted to

---

[1]     The opposition to plaintiff's motion was filed by Dusk nightclub, Dusk Management Group, AC Nightlife, LLC, Gary Veloric, Red Stripe Plane Group, Ron Anisette, Joseph Garofalo, Joshua Godfrey, Matthew Jaffe, Ramon Montero and Juan Rodriguez. These defendants will be collectively referred to as "Dusk" unless otherwise noted.

videotape, using her cell phone, Wheaten and the other officers/security personnel attack her brother at the Dusk nightclub in and around Caesar's Hotel and Casino. Id. Plaintiff alleges that after she announced she was recording the incident Wheaten seized her cell phone and assaulted her. Compl. ¶¶ 41-46. Plaintiff further alleges Wheaton then handed her cell phone to a "smaller man in a plaid shirt" who agreed to dispose of the phone. Compl. ¶ 47.

On February 18, 2014, Dusk served its Rule 26 disclosures which identified Juan Rodriguez, Matthew Jaffe, Tamron Bryant and Ramon Montero as relevant witnesses. Defs.' Br. at 8. Dusk also attached the relevant incident reports from the nightclub and stated its intention to serve video surveillance from the incident which was eventually received by plaintiff on April 28, 2014, after plaintiff informed the Court of defendant's failure to produce the video. See Bonjean Letters of April 25 and May 5, 2014 [Doc. Nos. 21, 22]. On May 15, 2014, counsel for Dusk identified "John Doe in plaid shirt" in the surveillance video as Joshua Godfrey, and also identified Bryant, Jaffe, and Rodriguez as former and current Dusk security personnel. See Defs.' Br., Ex. B [Doc. No. 39-2].[2] On June 3, 2014, after rejecting a settlement proposal from Dusk, Jennifer Bonjean, Esquire, counsel for plaintiff, asked John Underwood,

_____

[2] According to Dusk, Ramon Montero was not in the video but was previously identified. Defs.' Br. at 9.

3

Esquire, Dusk's counsel, if he would accept service of the summons and complaint for Godfrey. See Email Exchanges, Pl.'s Ex. D [Doc. No. 46-1]. Underwood did not immediately respond to Bonjean's inquiry. On June 9, 2014, Underwood provided Bonjean with Godfrey's contact information so that Bonjean could obtain a witness statement from him. See June 9, 2014 Email from Underwood to Bonjean, Pl.'s Ex. D [Doc. No. 46-1]. Bonjean alleges that on June 9, 2014 she had a 25-minute phone conversation with Godfrey during which he stated that he saw Wheaten "wrestle the phone away from the woman and scroll through it trying to delete photos or video." Pl.'s Supp. Br., Ex. B, Cooper Aff. ¶ 5 [Doc. No. 68-1]; see also Pl.'s Supp. Br., Ex. A, Taettle Aff. ¶ 7 [Doc. No. 68-1] (Underwood confirmed by telephone on June 12, 2014 that Godfrey "would provide a sworn statement admitting that he saw Defendant Officer Sterling Wheaten attempting to delete video or photos from [p]laintiff's phone.").

On July 4, 2014, Underwood responded to Bonjean's June 3 inquiry stating that he would not accept service for Godfrey as it was still uncertain if he would be representing him. See Email Exchanges, Pl.'s Ex. C [Doc. No. 46-1]. Plaintiff served Godfrey with the original complaint at his residence on July 16, 2014. See Pl.'s Reply, Ex. C (Aff. of Service) [Doc. No. 48-1]. On July 17, 2014, Underwood emailed all counsel proposed deposition dates for the "Dusk Employees." See Pl.'s Br., Ex. C (July 17, 2014 Email

4

from Underwood to Counsel). On July 21, 2014, the two-year statute of limitations expired. On August 1, 2014, Underwood confirmed that Ramon Montero would be available for his deposition but stated he could not produce for deposition Tamron Bryant, Matthew Jaffe, or Juan Rodriguez. See Pl.'s Br., Ex. D (Aug. 1, 2014 Email from Underwood to Bonjean). On August 5, 2014, Bonjean deposed Godfrey. See Godfrey Dep. [Doc. No. 43-9]. At the deposition, Godfrey admitted he was served with the complaint on July 16, 2014 in which he was a "named defendant."[3] See Godfrey Dep. Tr. 65:13-25. However, Godfrey denied he told Bonjean during their June 9, 2014 telephone conversation that he saw Wheaten attempt to delete footage from plaintiff's phone. Id.

Plaintiff filed her motion to amend on August 10, 2014. In her proposed amended complaint plaintiff seeks to: (1) properly identify defendant Joseph Garofalo as a Dusk nightclub security officer and not an Atlantic City police officer; (2) substitute "John Doe in plaid shirt" with defendant's name, Joshua Godfrey; (3) substitute as defendants Tamron Bryant, Matthew Jaffe, Juan Rodriguez and Ramon Montero who were previously identified as John Doe "unknown Dusk security personnel"; and (4) include more specific factual allegations. As a threshold matter, Dusk does not object to plaintiff's request to identify Garofalo as a security

---

[3] The original complaint does not name Godfrey but identifies him as "John Doe in plaid shirt". See Compl.

officer rather than an Atlantic City police officer. <u>See</u> Defs.'
Br. at 2. Dusk also does not object to plaintiff's request to
include more specific factual allegations. However, Dusk claims
the joinder of the proposed new defendants is barred by the statute
of limitations because the claims do not relate back to the filing
of the original complaint. The resolution of this issue involves
the interplay between the Federal Rules of Civil Procedure and New
Jersey's Civil Practice Rules, as well as several equitable
doctrines. Plaintiff asks the Court to permit the addition of the
five new defendants pursuant to Federal Rules of Civil Procedure
15(c)(1)(A) and (C), New Jersey's fictitious party Rule, N.J.R.
4:26-4, the general New Jersey relation back rule, N.J.R. 4:9-3,
the doctrine of equitable estoppel, and the New Jersey discovery
rule. As will be discussed, although plaintiff did not comply in
all respects with the applicable Federal and New Jersey Rules, her
motion will be granted in part. Because of her substantial
compliance with New Jersey's fictitious party rule, the Court will
grant plaintiff leave to name Godfrey as a defendant. The request
to name the four other proposed defendants is denied.

**<u>DISCUSSION</u>[4]**

---

[4]    There being no opposition, the Court grants plaintiff's request to
name Garofalo as a Dusk security officer and to add additional fact averments.
The Court's discussion focuses on plaintiff's request to name five individual
defendants.

Pursuant to Fed. R. Civ. P. 15(a), leave to amend pleadings "shall be freely given when justice so requires." Leave shall be freely given in the absence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies in previous amendments, undue prejudice or futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). See also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). "[A]bsent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (quoting Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1196 (3d Cir. 1994)). An amendment sought pursuant to Rule 15(a) shall be permitted unless it would be inequitable or futile. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002). Here, Dusk does not contend that plaintiff's amendment would cause undue delay, is made in bad faith, is based on a dilatory motive, or is repetitive of previous denials. Rather, Dusk argues plaintiff's amendment is futile because it is barred by the statute of limitations.

In determining the futility of an amendment the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Medpointe Healthcare, Inc. v. Hi-Tech Pharm. Co., 380

F.Supp. 2d 457, 462 (D.N.J. 2005) (quoting <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997)); <u>Alvin v. Suzuki</u>, 227 F.3d 107, 121 (3d Cir. 2000). The Court must accept as true all factual allegations contained in the proposed amended complaint and any reasonable inferences that can be drawn from them. <u>Brown v. Phillip Morris, Inc.</u>, 250 F.3d 789, 796 (3d Cir. 2001) (citing <u>Moore v. Tartler</u>, 986 F.2d 682, 685 (3d Cir. 1993)). The factual allegations must be enough, when taken as true, to state a claim for relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 570 (2007). As will be discussed, the Court finds that plaintiff's claim as to Godfrey relates back and is therefore not barred by the statute of limitations. However, the claims against the other four individuals do not relate back and are therefore futile because they are barred by the statute of limitations.

**A. The Relation Back Rules**

As a preliminary matter, the Court must determine when the statute of limitations expired on plaintiff's claims. In this regard, Dusk erroneously assumes that plaintiff is asserting a § 1983 claim against it and the proposed new defendants. <u>See</u> Defs.' Br. at 2. However, a close analysis of the complaint reveals that plaintiff is only asserting state tort law claims against Dusk.[5]

---

[5]     Plaintiff's claims against Dusk include "assault, battery, trespass, trespass to chattel[s], false arrest, false imprisonment, malicious prosecution, conversion, spoliation, conspiracy, slander, negligent infliction

The applicable statute of limitations for these state law tort claims under New Jersey law is two years. N.J. Stat. § 2A:14-2.

The statute of limitations for an action begins to run "from the moment of the wrong." Lopez v. Swyer, 62 N.J. 267, 274 (1973). Thus, the statute of limitations on plaintiff's tort claims ran two years after the date of the incident in question on July 21, 2012, or until July 21, 2014. Plaintiff filed her motion to amend to add the new defendants on August 10, 2014, which was after the statute of limitations expired. Because the statute of limitations bars plaintiff's proposed claims, plaintiff cannot amend her complaint to add the proposed defendants unless the amended

---

of emotional distress and intentional infliction of emotional distress." Compl. ¶ 72. Despite Count V of the complaint which alleges "defendants" conspired to violate plaintiff's civil rights, the Court does not read plaintiff's complaint to assert that Dusk acted as a state actor pursuant to § 1983. While there is no single method to determine whether a private individual or entity may be considered a state actor, the Supreme Court has articulated three distinct tests. Under the "sufficiently close nexus test," state action is present if the state ordered the private conduct, or "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (finding Medicaid recipients failed to establish state action in the nursing homes' decisions to discharge or transfer Medicaid patients to lower levels of care). Under the "joint action" theory, a private party who jointly participates, such as through a conspiracy, in constitutional wrongdoing with a state or local official has acted under color of state law. Dennis v. Sparks, 449 U.S. 24, 28-29 (1980) (finding a private party who conspired with a judge to have acted under color of state law). Last, under the "persuasive entwinement" theory of liability a private individual or entity may be considered a state actor where "relevant facts show pervasive entwinement to the point of largely overlapping identity." Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 303 (2001) (finding that where public schools represented 84% of an athletic association the association's regulation enforcement actions constituted state action). As noted, the Court does not read plaintiff's complaint to assert any of these theories against Dusk.

complaint "relates back" to the date the original complaint was filed.

Fed. R. Civ. P. 15(c) addresses when an amended pleading relates back to the date of a timely filed original pleading. Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 193 (3d Cir. 2001). Rule 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading, when:

> (A) [t]he law that provides the applicable statute of limitations allows relation back;
>
> . . .
>
> (C) [t]he amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The Court will consider relation back under Rules 15(c)(1)(A) and 15(c)(1)(C) separately.

**1. Rule 15(c)(1)(A)**

Pursuant to Rule 15(c)(1)(A), an amended complaint relates back to the filing of the original complaint if relation back is allowed under the law that provides the applicable statute of limitations, in this case, New Jersey law. The relevant New Jersey

10

Rule, 4:26-4, which applies to actions in which fictitious or John Doe parties are named, provides:

> [I]f the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification. Plaintiff shall on motion, prior to judgment, amend the complaint to state defendant's true name, such motion to be accompanied by an affidavit stating the manner in which that information was obtained.

As the Rule states, when pleading fictitiously the pleading party must not know the true identity of the fictitious defendant and must include in the pleading an appropriate description sufficient to identify the defendant. N.J.R. 4:26-4; Rutkowski v. Liberty Mut. Ins. Co., 209 N.J. Super. 140, 146 (App. Div. 1986).[6] Additionally, the "fictitious party rule may be used only if the plaintiff exercised due diligence to ascertain the defendant's true name before and after filing the complaint." DeRienzo v. Harvard Industries, Inc., 357 F.3d 348, 353 (3d. Cir. 2004) (applying New Jersey law). "A plaintiff will be precluded from using R. 4:26-4 if, through the use of diligence, the defendant's identity could have been determined prior to the running of the statute of limitations." Monaco v. City of Camden, C.A. No. 04-2406 (JBS), 2008 WL 408423, at *4-5 (D.N.J. February 13, 2008).

---

[6] The John Doe parties were appropriately identified in plaintiff's complaint. See Compl. ¶¶ 12, 14 ("John Doe in plaid shirt" and unknown "Dusk security personnel").

As the New Jersey Supreme Court has not provided a "standard definition" of due diligence, its meaning is determined on a case-by-case basis. DeRienzo, 357 F.3d at 354 (citing O'Keefe v. Snyder, 83 N.J. 478, 499 (1980)); see, e.g., Mears v. Sandoz Pharm., Inc., 300 N.J. Super. 622, 632 (App. Div. 1997) (plaintiff's failure to inquire about a contractor's identity at a job site, as well as the failure to make other simple inquiries within the limitations period, did not amount to due diligence); Ortiz ex rel. Rivera v. City of Camden, C.A. No. 11-2300 (NLH/AMD), 2013 WL 1811895, at *4-5 (D.N.J. Apr. 29, 2013) (plaintiffs, though "not tenacious in their quest to identify the officers" to be named in the complaint, satisfied the due diligence requirement by naming them after their names were revealed through discovery). While the definition is fluid, "[t]he New Jersey Supreme Court has instructed that [the district] court should broadly interpret the diligence requirement to one of a 'good faith' effort by plaintiff to determine the fictitious party's identity." Ortiz, 2013 WL 1811895, at *5 (citation omitted).

In addition, application of the fictitious party rule must not prejudice the defendant "by the delay in its identification as a potentially liable party and service of the amended complaint." Claypotch v. Heller, Inc., 360 N.J. Super. 472, 480 (App. Div. 2003) (citing Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 122 (1973)). Factors which New Jersey courts have found to

constitute substantial prejudice include destruction or alteration of evidence after the initial discovery period, frustration of attempts at subsequent examination, witness unavailability, or memory lapse due to delay. DeRienzo, 357 F.3d at 356. Thus, whether plaintiff may avail herself of N.J.R. 4:26-4 turns on three factors: (1) whether plaintiff exercised due diligence in identifying the proposed defendants; (2) whether the lapse of time has prejudiced the proposed defendants; and (3) whether plaintiff acted with due diligence in substituting the proposed defendants once they were identified. See Padilla v. Twp. of Cherry Hill, 110 Fed. Appx. 272, 277 (3d Cir. 2004). The Court will consider proposed defendant Godfrey and the remaining proposed defendants separately to determine if plaintiff has met these requirements.

**a. Godfrey**

As to the first factor, there is little question that plaintiff vigorously sought Dusk's videotape and aggressively sought to identify Godfrey. As an example, as early as the Rule 16 scheduling conference on February 5, 2014, plaintiff made it clear that a paramount concern was to identify the John Doe in the plaid shirt. When plaintiff did not receive the relevant surveillance video from defendant, she promptly sought relief from the Court. See Bonjean Letter of April 25, 2014. The identities of the persons depicted in the video, including Godfrey, were not disclosed by Underwood until May 15, 2014. Thereafter, on June 3, 2014, Bonjean

13

asked Underwood if he would accept service for Godfrey, to which Underwood ultimately replied he would not. See Email Exchanges, Pl.'s Ex. C. Nonetheless, plaintiff discovered Godfrey's contact information on her own and served him at his residence on July 16, 2014. See Aff. of Service. For these reasons, plaintiff unquestionably exercised due diligence and acted in good faith to identify Godfrey.

Next, the Court considers whether Godfrey is unfairly prejudiced by being named as a party. The answer is no. Before the statute of limitations expired Godfrey had actual knowledge he was being sued in the instant action. In fact, Godfrey admitted during his deposition that he was the John Doe in the complaint served upon him. See Godfrey Dep. Tr. 65:13-25. Further, there is no evidence there has been destruction or alteration of relevant evidence, frustration of attempts at subsequent examination, witness unavailability or memory lapse due to the fact that Godfrey was served after and not before the statute of limitations ran. DeRienzo, 357 F.3d at 356. In addition, there was general compliance with the purpose of the statute as Godfrey was notified within the limitations period that he would be sued. Thus, Godfrey will not suffer any meaningful prejudice by being added as a party. See Estate of Vida, 330 N.J. at 230 (finding that the purpose of a statute of limitations is to "encourage the litigation of fresh

complaints and to provide a defendant with prompt notice of a claim in order to prepare a defense to the claim.").

Last, the Court considers whether plaintiff acted with due diligence in substituting Godfrey once his identity was ascertained. The problem in this regard is that although plaintiff knew Godfrey's identity by May 15, 2014, she did not file her motion until August 10, 2014, after the statute of limitations expired. However, this delay is ameliorated by the fact that although the instant motion was not filed until August 10, 2014, plaintiff served Godfrey with the original complaint on July 16, 2014, within the limitations period. Thus, according to plaintiff, Godfrey was diligently substituted as a party within the meaning of N.J.R. 4:26-4 once his identity was known. Pl.'s Supp. Br. at 6. Dusk disagrees and argues that plaintiff failed to exercise due diligence because she waited until August 10, 2014 to file her motion. Nevertheless, although the better course of action would have been for plaintiff to file her motion to amend to add Godfrey before the statute of limitations ran, this oversight is not fatal. Since plaintiff substantially complied with the fictitious party Rule as to Godfrey, she will be granted leave to substitute him for a John Doe party.

Under New Jersey law, substantial rather than hypertechnical compliance with the fictitious party rule is sufficient for an amended pleading to relate back. In order to show substantial

compliance with a statute of limitations under New Jersey law, a plaintiff must demonstrate the following elements: (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) general compliance with the purpose of the statute; (4) reasonable notice of plaintiff's claim; and (5) a reasonable explanation why there was not strict compliance with the statute. Fahey, 2009 WL 749856, at *3 (citing Negron v. Llarena, 156 N.J. 296, 305 (1998)). "Courts invoke the doctrine of substantial compliance to avoid technical defeats of valid claims." Negron v. Llarena, 156 N.J. 296, 305 (1998) (internal citation omitted).

All of the necessary elements to apply the substantial compliance doctrine are met here. As discussed supra, Godfrey is not prejudiced by the substitution. Additionally, plaintiff took substantial steps to comply with the applicable Rules, including determining Godfrey's identity and serving him with the complaint. Plaintiff's efforts were obviously effective because Godfrey acknowledged before the statute of limitations ran that he was the John Doe named in the complaint. This demonstrates a general compliance with the purpose of the statute – notice within the limitations period[7] and an absence of prejudice to Godfrey.

---

[7] As stated supra, Godfrey had actual notice of the suit prior to the expiration of the statute of limitations. To be sure, notice prior to the expiration of the statute of limitation is not, on its own, sufficient to demonstrate substantial compliance with a statute of limitations. See Fahey,

Further, plaintiff has offered a reasonable explanation why there was not strict compliance with the applicable Rules. First, plaintiff believed she complied with the Rules by serving Godfrey on July 16, 2014. Plaintiff was under the good faith mistaken belief that service of the original complaint on Godfrey was sufficient to toll the statute before plaintiff filed the instant motion. While the Court does not endorse this misunderstanding of the federal and New Jersey Rules, if substantial compliance does not apply in this scenario – where a proposed defendant was served with a complaint and had actual knowledge he was being sued within the statute of limitations period – it is hard to conceive of a situation where it would apply.

In an analogous Appellate Division case, the court considered whether the plaintiff should be granted leave to amend her complaint to substitute a John Doe defendant. See Estate of Vida ex rel. Kesciova v. City of Garfield, 330 N.J. Super. 225 (App. Div. 2000). In this case, the substituted defendant received actual notice of the suit by service of the complaint within the limitations period but the plaintiff did not seek leave to amend her complaint until four months after the statute expired. Id. Focusing on the notice received within the limitations period and lack of prejudice to defendant, the court reversed the trial

---

2009 WL 749856, at *2 n.2. In this case, however, plaintiff has additionally satisfied the remaining elements of the substantial compliance doctrine.

court's findings and deemed the application of the substantial compliance doctrine appropriate to prevent the barring of the claim based on a "technical defect". <u>Id.</u> at 230-31. The same circumstances are present here. As a result, because plaintiff has substantially complied with the fictitious party Rule, N.J.R. 4:26-4, the Court will grant plaintiff leave to file her amended complaint to name Godfrey as a defendant.

For completeness sake, the Court will address and deny several of plaintiff's alternative equitable arguments for why relation back applies under Rule 15(c)(1)(A). Plaintiff argues that Godfrey should be substituted under the doctrine of equitable estoppel or pursuant to the discovery rule. Neither apply. The doctrine of equitable estoppel applies when an action is commenced after the expiration of the statute of limitations but fairness dictates that the plaintiff be permitted to pursue the action. <u>Feldman v. Urban Commercial, Inc.</u>, 70 N.J. Super. 463, 474 (Ch. Div. 1961) (citing 3 Pomeroy's Equity Jurisprudence, (5th ed.), sec. 804, p. 189). The essential elements which must be present for a court to equitably estop a defendant from the benefit of a statute of limitations are: 1) that the defendant must have misrepresented or concealed a material fact; 2) the misrepresentation or concealment of a material fact was known to defendant but unknown to the plaintiff; 3) the misrepresentation or concealment of material fact was made with the intention or expectation that it would be

acted upon by the plaintiff; and 4) the plaintiff relied upon the misrepresentation or concealment of material facts by the defendant and changed the plaintiff's position in reliance thereon. Torcon, Inc. v. Alexian Bros. Hosp., 205 N.J. Super. 428 (Ch. Div. 1985), aff'd, 209 N.J. Super. 239 (App. Div. 1986). "Specifically, New Jersey courts have found the doctrine of equitable tolling to apply in the following situations: (1) where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass; (2) where a plaintiff has in some extraordinary way been prevented from asserting his rights; and (3) where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." Fahey v. Hollywood Bicycle Ctr., Inc., C.A. No. 08-3573 (RBK), 2009 WL 749856, at *4 (D.N.J. Mar. 18, 2009), aff'd, 386 Fed. Appx. 289 (3d Cir. 2010) (citing Freeman v. State, 347 N.J. Super. 11 (N.J.Super.Ct.App.Div. 2002)) (internal quotation marks and citations omitted). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Id.

Plaintiff alleges that at least part of the delay in the filing of the instant motion was caused by Dusk's failure to timely produce its surveillance video and identify the persons featured.

Pl.'s Supp. Br. at 9. Plaintiff also alleges that another reason for the delay was due to her engagement in settlement discussions with Dusk. Id. The Court finds that these allegations do not constitute misrepresentations or concealment on the part of Dusk. Torcon, 205 N.J. Super. at 428. Although it could have been produced earlier, Dusk produced its video well before the statute of limitations ran. Further, plaintiff was not duped into believing Dusk would definitely settle. With all facts considered, there is an absence of evidence of trickery or intentional inducement by Dusk. Fahey, 2009 WL 749856, at *4. Thus, the doctrine of equitable estoppel is inapplicable here.

The discovery rule is an equitable principle by which "the accrual of a cause of action is delayed until the injured party discovers, or by the exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 419 (1987) (citing Viviano v. CBS, Inc., 101 N.J. 538, 546 (1986)) (internal quotations omitted). In personal injury actions, the statute does not begin to run until (1) the plaintiff knows he has been injured; and (2) the plaintiff either knows or should know that his injury was caused by another party's conduct. Lopez v. Swyer, 62 N.J. 267, 274 (N.J. 1973). For purposes of the discovery rule, knowledge of fault "requires only the awareness of facts that would alert a reasonable person exercising ordinary

20

diligence that a third party's conduct may have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care." Savage v. Old Bridge–Sayreville Medical Group, P.A., 134 N.J. 241, 248 (N.J. 1993). The application of the discovery rule to this case is misplaced. Plaintiff knew she was injured and the cause of her injuries prior to the expiration of the statute of limitations. Plaintiff alleged in her complaint that "Godfrey" conspired to conceal evidence. See Compl. ¶ 72. Plaintiff did not have to wait until after Godfrey was deposed to specifically name him in the amended complaint. Therefore, the discovery rule does not apply.

### b. Rodriguez, Jaffe, Bryant and Montero

Unlike Godfrey, the joinder of Rodriguez, Jaffe, Bryant and Montero under Rule 15(c)(1)(A) is denied. The facts surrounding the fictitious party analysis as to these proposed defendants are materially distinguishable from those pertaining to Godfrey. As already discussed, plaintiff exercised due diligence in identifying all of the proposed defendants. However, once their identities were determined, at the latest by May 15, 2014 when Underwood identified these individuals in the surveillance video, plaintiff did not name Rodriguez, Jaffe, Bryant or Montero in an amended complaint. Nor did plaintiff serve these defendants with the original complaint within the limitations period as she did with Godfrey. Indeed, plaintiff has presented no evidence that

these proposed defendants were aware that they would be named in the suit or that plaintiff took any actions to name them before the statute of limitations ran. As a result, plaintiff has not demonstrated due diligence in substituting the proposed defendants once their identities were ascertained. Therefore, plaintiff cannot avail herself of N.J.R. 4:26-4 to substitute Rodriguez, Jaffe, Bryant and Montero as defendants.

The Court will not apply the doctrine of substantial compliance as to these individuals. In particular, plaintiff offers no reasonable explanation why these defendants were not substituted after their identities were ascertained but before the statute of limitations expired. Unlike Godfrey, no equitable circumstances exist to salvage plaintiff's amendment as the remaining proposed defendants.

Plaintiff's attempt to rely on N.J.R. 4:9-3 is fruitless. N.J.R. 4:9-3 ("When Amendments Relate Back") is not applicable here since plaintiff's original complaint designates the proposed defendants as "John Doe in plaid shirt" and unknown Dusk security personnel. When the John Doe designation is used, the fictitious party rule, and not N.J.R. 4:9-3, is the applicable rule under which an amendment should be analyzed. See Alcius v. City of Trenton, C.A. No. 13-716 (AET), 2014 WL 4662304, at *2 n.3 (D.N.J. Sept. 18, 2014) (citing McGill v. John Does A-Z, 541 Fed. Appx. 225, 227-28 (3d Cir. 2013) ("[plaintiff] filed suit against the

22

John Does, presupposing a need for later amendment, rather than mistakenly identifying incorrect defendants. Thus . . . the fictitious party rule is the appropriate rule under which to consider the amendments in this case.")); Viviano v. CBS, Inc., 101 N.J. 538, 552 (1986) ("Although Rule 4:9-3 and Rule 4:26-4 permit an amended pleading to relate back to an earlier one, one difference between the two Rules is that the fictitious-party practice authorized by Rule 4:26-4 expressly contemplates the filing of an amended complaint. By comparison, Rule 4:9-3 permits the addition of a new claim or a new party when the original complaint did not contemplate the need for such an amendment."). In short, plaintiff cannot rely on N.J.R. 4:9-3 when she is relying on the fictitious party or John Doe practice in N.J.R. 4:26-4. Thus, all of plaintiff's arguments as to the application of N.J.R. 4:9-3 in the present context are off the mark.

### 2. Rule 15(c)(1)(C)

Because plaintiff has been granted leave to substitute Godfrey as a defendant pursuant to Fed. R. Civ. P. 15(c)(1)(A) through the application of N.J.R. 4:26-4, the Court only considers whether the remaining four individuals may be added pursuant to Fed. R. Civ. P. 15(c)(1)(C).[8] Under Rule 15(c)(1)(C) relation back

---

[8] If the Court considered whether Godfrey could be added under Rule 15(c)(1)(C), it would reach the same result as the other four defendants since Godfrey did not have actual or imputed knowledge of the lawsuit within 120 days of the filing of the complaint.

is available if a proposed defendant received actual or constructive notice of the action within 120 days of the filing of a complaint. Browning v. Safmarine, Inc., 287 F.R.D. 288, 290 (D.N.J. 2012) (citing Fed. R. Civ. P. 4(m)). The Rule also requires that the proposed defendant have actual or constructive knowledge that he or she would have been named but for a "mistake" on the part of the plaintiff. Id.

As an initial matter, the Third Circuit construes the "mistake" requirement broadly to encompass "John Doe" amendments, as long as the other requirements of Rule 15(c) are satisfied. Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 175 (3d Cir. 1977); Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 191 (3d Cir. 2001) (Rule 15(c)(1)(C) applies where a plaintiff seeks to replace a "John Doe" or "Unknown Person" with the name of a real defendant). Thus, as the four individuals had John Doe or Unknown Person designations in plaintiff's original complaint, the "mistake" requirement is met.

Next, the Court considers whether the proposed individual defendants received actual or constructive notice of the action within 120 days of the filing of the complaint. Plaintiff has presented no evidence that these individuals received actual notice within this time period. Accordingly, the Court will consider whether notice can be imputed. Notice may be imputed to a party through the concepts of "shared attorney" or "identity of

24

interest". Id. Notice is imputed through the "shared attorney" method when the originally named party and the party who is sought to be added are represented by the same attorney. Id. The Third Circuit has held that to impute notice under the shared attorney method, "a plaintiff must show that there was some communication or relationship between the shared attorney and the John Doe defendant prior to the expiration of the 120-day period [after the complaint is filed.]" Garvin v. City of Philadelphia, 354 F.3d 215, 225 (3rd Cir. 2003) (internal citations omitted); Browning v. Safmarine, Inc., 287 F.R.D. 288, 291 (D.N.J. 2012); Boerger v. Commerce Ins. Servs., C.A. No. 04-1337 (JHR), 2005 WL 3235009, at * 5 n.4 (D.N.J. Nov. 28, 2005). Thus, the inquiry becomes whether plaintiff has presented any evidence of shared representation with the named parties within 120 days following the filing of the complaint. Here, plaintiff has failed to come forth with evidence of shared representation or communication between proposed defendants Bryant, Jaffe, Rodriguez and Montero and the counsel of an existing party which occurred within 120 days after the complaint was filed.[9]

---

[9] In support of her theory that Rule 15(c)(1)(C) applies, plaintiff cites two cases, Varlack v. SWC Caribbean, Inc., 550 F.2d 171 (3d Cir. 1977), and Heinly v. Queen, 146 F.R.D. 102 (E.D. Pa. 1993). In Varlack the court permitted the plaintiff to substitute a John Doe party but noted that the third prerequisite for relation back under Rule 15(c) is knowledge of the lawsuit within 120 days of the filing of the complaint. 550 F.2d at 175. In that case, without describing what the record showed, the court found that there was testimony from which the district court properly concluded such notice was given within the prescribed period. That is not the case here. Plaintiff has not presented evidence that any proposed defendant had actual or imputed knowledge

The crux of plaintiff's argument in relation to these proposed defendants is that Dusk and the proposed individual defendants are both represented by John Underwood, Esquire. Specifically, plaintiff points to Underwood's email of July 17, 2014 in which he provided proposed deposition dates for the "Dusk Employees," thus indicating that he represented them at that time. See Pl.'s Br., Ex. C. Plaintiff argues that Underwood's acceptance of the Dusk employees "'notice to depose' serves as recognition by their counsel that these individuals were among the intended John Does identified in [p]laintiff's complaint." Pl.'s Br. at 7. However, even if this was enough to impute knowledge to these proposed defendants, these communications in July 2014 are substantially beyond 120 days after the filing of the complaint in November

---

of the lawsuit within 120 days of the filing of the complaint. Additionally, plaintiff cites Heinly for the proposition that the "mistake aspect" of Rule(c)(1)(C) "is designed to insure that the new defendant knew or should have known within the relevant time period that joinder was a distinct possibility." Pl.'s Supp. Br. at 5. There is no dispute that in the Third Circuit, a John Doe designation is considered a "mistake" for purposes of Rule 15(c)(1)(C). Singletary, 266 F.3d at 191 (3d Cir. 2001). However, plaintiff misses the mark again in that in Heinly the court found evidence that the proposed defendant had knowledge within 120 days of the filing of the complaint that it might be joined. 146 F.R.D. at 107. Further, Heinly was abrogated by Third Circuit which concluded that Heinly had interpreted the shared attorney method of imputed knowledge too broadly. See Garvin v. City of Philadelphia, 354 F.3d 215, 226 (3d Cir. 2003).

2013.[10] In the absence of any further evidence, notice cannot be imputed using the shared attorney method.[11]

Alternatively, notice may be imputed through the "identity of interest" method when parties are so closely related to Dusk that the institution of an action against one serves to provide notice to the other. Id. at 227. Although plaintiff does not specifically make an "identity of interest" argument in her moving papers, she alludes to the concept when she points out that the proposed defendants are or were formerly employed by Dusk, were all present at the July 21, 2014 incident, and Dusk's counsel accepted notice for their depositions prior to the expiration of the statute of limitations. See Pl.'s Br. at 6. Therefore, the Court will determine whether Bryant, Jaffe, Rodriguez or Montero are so closely related to Dusk that the institution of litigation against Dusk serves to provide notice of the litigation to the employees.

_____

[10] In her supplemental brief, plaintiff states, "[d]uring the arguments on [p]laintiff's motion to amend, attorney Underwood acknowledged that he represented Dusk and all of the Dusk employees (except Josh Godfrey . . .) from the start of this litigation." Pl.'s Supp. Br. at 15. The Court has reviewed the October 20, 2014 transcript and does not find support for plaintiff's assertion. When the Court asked plaintiff's counsel what evidence supported the notion that Rodriguez, Jaffe or Bryant knew about the litigation before July 21, 2014, plaintiff stated the "only indication in the record" were Underwood's emails regarding the deposition notices in July 2014. Oct. 20, 2014 Tr. 51:14-16.

[11] The New Jersey corollary to Rule 15(c)(1)(C), N.J.R. 4:9-3, is more liberal than its federal counterpart as notice may be gained at any time before the statute of limitations expires. However, as already discussed, N.J.R. 4:9-3 does not apply where a John Doe party is named. In that event, plaintiff has to rely on N.J.R. 4:26-4. Thus, even if plaintiff is correct that notice may be imputed pursuant to the shared attorney doctrine, this is not determinative as to whether plaintiff's amended complaint relates back.

27

Singletary, 266 F.3d at 197. Based upon the facts presented to the Court, Bryant, Jaffe, Rodriguez and Montero do not satisfy the notice requirement using the identity of interest method. In Garvin and Singletary, the Third Circuit held that "a non-management employee . . . does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee[.]" Garvin, 354 F.3d at 227 (finding individual police officers qualify as non-managerial employees who do not share a sufficient nexus of interests with their employer) (quoting Singletary, 266 F.3d at 200). Here, plaintiff has not alleged that Bryant, Jaffe, Rodriguez or Montero are management employees who share a sufficient nexus of interest with their employer. Accordingly, Bryant, Jaffe, Rodriguez and Montero are not so closely related in their business operations at Dusk nightclub that the institution of an action against Dusk serves to provide notice of the litigation to them. As a result, plaintiff cannot use imputed notice to amend her complaint to add Bryant, Jaffe, Rodriguez and Montero as new defendants pursuant to Rule 15(c)(1)(C). Because plaintiff is unable to show that the claims against Bryant, Jaffe, Rodriguez and Montero relate back to the filing of the original complaint pursuant to Rules 15(c)(1)(A) or (C), plaintiff's proposed amendment as to these individuals is futile and will be denied.

**CONCLUSION**

28

In sum, the Court will grant plaintiff leave to amend her complaint to substitute Godfrey for a John Doe defendant, and to relate the amendment back to the date the complaint was filed. Pursuant to Rule 15(c)(1)(A), plaintiff may rely upon N.J.R. 4:26-4. Godfrey may be added pursuant to this Rule because he was appropriately identified as a John Doe party in the complaint, plaintiff exercised diligence to identify Godfrey, and plaintiff substantially complied with her duty to diligently name Godfrey after his identity was discovered. The remaining proposed defendants may not be joined pursuant to N.J.R. 4:26-4 because plaintiff did not act diligently to name them after their identities were discovered.

Although Rule 15(c)(1)(A) permits a party to rely on N.J.R. 4:9-3 to relate back an amendment, the Rule does not apply here. When a John Doe designation is used, a plaintiff may only rely on N.J.R. 4:26-4 to relate back an amendment and not N.J.R. 4:9-3.

Rodriguez, Jaffe, Bryant and Montero may not be joined pursuant to Rule 15(c)(1)(C) because they did not have knowledge plaintiff filed her complaint within 120 days after the complaint was filed.

An Order consistent with this Opinion will be entered.

                                   /s/ Joel Schneider
                                   JOEL SCHNEIDER
                                   United States Magistrate Judge

Dated: November 19, 2014