IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

JANINE COSTANTINO,

               Plaintiff,

    v.

CITY OF ATLANTIC CITY, et al.,

               Defendants.

Civil No. 13-6667 (RBK/JS)

## OPINION

The incessant discovery disputes regarding the production of Atlantic City's Internal Affairs ("IA") files which have plagued the case have gone on long enough. It is time to end the bickering. The Court will decide once and for all how many Internal Affairs ("IA") files Atlantic City must produce in discovery.[1] The Court does not want there to be any ambiguity about its ruling. In short, plaintiff will get everything she originally asked for. Atlantic City is ordered to produce all of its IA files from 2003 to December 31, 2014. This totals

---

[1] In New Jersey a municipal police department is not a separate legal entity from the governing municipality. Franks v. Cape May County, C.A. No. 07-6005 (JHR), 2010 WL 3614193, at *7 (D.N.J. Sept. 8, 2010). Thus, unless appropriate the Court will refer to Atlantic City and not the Atlantic City Police Department ("ACPD").

approximately 2,000 files.[2] In addition to ordering the production of the files, the parties shall meet and confer to propose a reasonable schedule to produce the responsive documents. If the parties are unable to agree the Court will issue an appropriate order. The parties will be given a reasonable but short time to agree as the case has already been delayed too long.

In brief summary, after the Court preliminarily indicated that it would not order Atlantic City to produce all of its IA files, plaintiff requested 721. However, after extensive briefing and oral argument, and after hearing the testimony of the parties' experts and the officer in charge of Atlantic City's Internal Affairs Unit, the Court is firmly convinced that Atlantic City should produce all of its IA files. The files are vital to plaintiff's Monell claim. Further, the parties' experts agree that in order to conduct the most accurate and complete analysis of Atlantic City's IA process, all IA files should be reviewed. In addition, the complete production will not only halt the ongoing dispute over what is a "representative sample" of files, but it will also short circuit unnecessary evidentiary disputes and motion practice. In contrast to these benefits Atlantic City has not shown that it will be unduly burdensome to

---

[2] Plaintiff has a choice whether she wants copies of all files or whether she first wants to inspect the files to designate what she wants copied.

produce the requested files. In fact, the opposite is true. And, whatever present burden results from the Court's Order will be offset by the future efficiencies and benefits Atlantic City will earn.[3]

Background

The background of the case has already been set forth in detail in other rulings issued in the case.[4] For present purposes it is enough to know that plaintiff alleges that on July 21, 2012, she was assaulted by security personnel and Atlantic City police officers at the Dusk Nightclub in Atlantic City, New Jersey. Plaintiff alleges that when she tried to record the incident Officer Sterling Wheaten not only assaulted her but also took her cell phone which has not been recovered. Plaintiff alleges Wheaten taunted her and filed false criminal charges which were eventually dropped. Plaintiff filed her § 1983 civil rights complaint naming Atlantic City and Officers Wheaten and Garafolo on November 1, 2013.

---

[3] To be clear, this Opinion does not address the merits of plaintiff's claims. This Opinion simply decides the parties' discovery dispute regarding how many IA files should be produced.

[4] See Costantino v. City of Atl. City, C.A. No. 13-6667 (RBK/JS), 2015 WL 668161 (D.N.J. Feb. 17, 2015) (denying Atlantic City's request to stay the case because of the bankruptcy filing of co-defendant Caesar's Entertainment Corporation); Costantino v. City of Atl. City, C.A. No. 13-6667 (RBK/JS), 2014 WL 6474076 (D.N.J. Nov. 19, 2014) (granting in part and denying in part plaintiff's motion to amend).

Plaintiff is pursuing a <u>Monell</u> claim against Atlantic City. Plaintiff intends to show, <u>inter</u> <u>alia</u>, that Atlantic City has a custom, practice and policy of acquiescing in the habitual use of excessive force and the filing of false criminal charges by its police officers which it knew or shown have known would result in the violation of citizens' civil rights. Plaintiff contends that Atlantic City's actions encourage, foster and cause police misconduct. In short, plaintiff alleges Atlantic City's IA process is a sham.

To date Atlantic City has only produced the IA files of the two police officer defendants. The underlying discovery dispute concerns Atlantic City's objection to producing any additional IA files. While plaintiff wants to review all of Atlantic City's IA files, she requested a "representative sample" of files based on the assumption that the Court would not order Atlantic City to produce all of its files.[5] Atlantic City objected to plaintiff's request and argues that no additional IA files should be produced. The rub is that while Atlantic City continues to argue that any conclusions plaintiff's expert draws from a representative sample is inadequate and not representative of Atlantic City's conduct, Atlantic City objects to producing any more IA files. Therein lies the conundrum.

---

[5] <u>See</u> Dec. 12, 2012 Tr. 10:12-19. Plaintiff's assumption is not unfounded given the Court's previous rulings in another Atlantic City case.

4

Additional background information is necessary to put the current discovery dispute in perspective. Atlantic City and its police department, and Wheaten in particular, are no strangers to § 1983 lawsuits in this District. According to the Court's rough count, Atlantic City is a named defendant in approximately thirty (30) pending § 1983 cases.[6] This number underestimates the number of § 1983 cases involving Atlantic City because it does

---

[6] See Aksanov v. Harrah's Casino Hotel, et al., C.A. No. 10-5883 (JEI/AMD); Abbot v. City of Atlantic City, et al., C.A. No. 11-4851 (JHR/AMD); Groark v. Timek, et al., C.A. No. 12-1984 (RBK/JS); Muhammad v. State of NJ, et al., C.A. No. 12-7206 (RBK/JS); Michelle Alfred v. State of NJ, et al., C.A. No. 13-332 (RBK/AMD); Worster-Sims, et al. v. Tropicana Entertainment, Inc., et al., C.A. No. 13-1981 (RBK/JS); Steven M. Stadler v. Glenn Abrams, Jr., et al., C.A. No. 13-2741 (RBK/AMD); Hopewell v. Pali, et al., C.A. No. 13-5801 (RBK/AMD); Castellani v. City of Atlantic City, et al., C.A. No. 13-5848 (RMB/AMD); Adams v. City of Atlantic City, et al., C.A. No. 13-7133 (JBS/AMD); Bocchino v. City of Atlantic City et al., C.A. No. 14-233 (AMD); T.B. v. City of Atlantic City, et al., C.A. No. 14-0109 (JHR/AMD); Mauceri, et al. v. Harrah's Resort Casino, et al., C.A. No. 14-2477 (RBK/JS); Palms v. Giercyk et al., C.A. No. 14-2467 (JBS/KMW); Montanez v. City of Atlantic City, et al., C.A. No. 14-4055 (RBK/JS); Sharp v. City of Atlantic City, et al., C.A. No. 14-4256 (JBS/JS); Gooden v. Jubilee et al., C.A. No. 14-4415 (RMB/JS); Viscio v. Marina District Development Co., LLC, et al., C.A. No. 14-4642 (RBK/JS); Coney v. Caesar's Entertainment Corp., et al., C.A. No. 14-4981 (RBK/JS); Walsh v. Caesar's Entertainment Corp., et al., C.A. No. 14-5263 (NLH/JS); Graver v. Atlantic City, et al., C.A. No. 14-5520 (RMB/AMD); Charlie Harrison v. City of Atlantic City, C.A. No. 14-6292 (JHR/AMD); Bryan v. City of Atlantic City, et al., C.A. No. 14-6319 (JS); Jonathan A. Cohn v. Scott J. Fenton et al., C.A. No. 14-6647 (RMB/AMD); Troy Rivera v. City of Atlantic City, et al., C.A. No. 14-6883 (NLH/AMD); Michelle Alfred v. Atlantic City Police Department SWAT, et al., C.A. No. 14-7536 (RBK/JS); Ruby Conde v. City of Atlantic City, C.A. No. 14-7531 (JHR/AMD); Nicholas Zampetis v. City of Atlantic City, C.A. No. 15-1231 (NLH/AMD).

not include the substantial number of settled or dismissed cases, or cases tried to verdict, of which there are many. Indeed, plaintiff's counsel is presently handling five (5) of these cases. Wheaten is a named defendant in at least two other pending cases.[7] Not unexpectedly or surprisingly, Atlantic City has been ordered to produce IA files in numerous other cases.[8]

A not too dissimilar case relevant to appreciating the background of this case is Groark v. Timek, et al., C.A. No. 12-1984 (RBK/JS). The Groark complaint, filed on April 2, 2012, is similar to the spate of other § 1983 civil rights actions naming Atlantic City and its police officers, including Wheaten. The case is significant because virtually all IA related discovery issues decided in Groark are or were at issue in this case. Groark also "sets the scene" for the discovery dispute addressed in this Opinion.

In Groark the plaintiff alleged that while he was a patron at the Dusk Nightclub in Caesar's Casino in Atlantic City on August 7, 2010, Wheaten and another police officer assaulted him without provocation. Also like this case, the plaintiff was arrested and criminal charges were filed which were eventually

---

[7] See Groark v. Timek, et al., C.A. No. 12-1984 (RBK/JS); Castellani v. City of Atlantic City, et al., C.A. No. 13-5848 (RMB/AMD).

[8] See Groark v. Timek("Groark I"), 989 F. Supp. 2d 378, 391 n.14 (D.N.J. 2013).

dropped. In Groark, Atlantic City initially objected to plaintiff's request for its IA files.[9] On November 27, 2013, the Court granted Groark's motion to compel discovery and directed Atlantic City to produce (1) the "complete" Internal Affairs files for the defendant police officers, including Wheaten[10]; (2) all Internal Affairs Index Cards for the defendant officers; and (3) the complete records and investigations regarding the August 7, 2010 incident. At bottom, the Court justified its decision by ruling that the plaintiff's interest in the requested IA files substantially outweighed Atlantic City's confidentiality concerns. Groark I, 989 F. Supp. at 390-94. The Court also discussed in detail how and why the requested discovery was relevant to Groark's Monell claim. Id. at 393.

Subsequent to its November 27, 2013 decision, Groark requested all of Atlantic City's IA files from 2003 to the present, not just those of the defendant officers. The Court

[9] On various occasions Atlantic City objected to producing any IA files, IA files for anything other than "excessive force" and "false arrest" complaints, and IA complaints that post-dated the August 7, 2010 incident. These objections were all overruled.

[10] These included all IA files that pre-dated and post-dated the August 7, 2010 incident at issue. These also included IA files for all complaints, not just those categorized as "excessive force" or "improper arrest." The "Index Card" for Wheaten listed 26 complaints from September 19, 2008 to April 26, 2012. As to Wheaten's co-defendant, Officer Frank Timek, his "Index Card" listed 52 complaints from May 30, 2001 to March 20, 2012. Groark I, 989 F. Supp. 2d at 383.

estimated that 1,887 files existed (not including 2013 files). Atlantic City objected to the request. It also objected to producing what it referred to as "factually dissimilar complaints." On July 18, 2014, the Court granted in part and denied in part Groark's motion to compel discovery. Instead of directing Atlantic City to produce all of its IA files, the Court Ordered Atlantic City to produce a "representative sample of its IA files from January 1, 2003 to August 10, 2011 (one year post-incident)." See Groark v. Timek (Groark II), C.A. No. 12-1984 (RBK/JS), 2014 WL 3556367, at *10 (D.N.J. July 18, 2014). The Court also ruled that plaintiff may discover IA files for all police officers, not just the named defendants, and IA files for all serious police complaints, not just the limited categories Atlantic City requested.[11]

Rather than defining the number of files that comprised a "representative sample," and hoping that a reasonable compromise could be worked out, the Court directed the parties to meet and confer to see if they could agree. After the parties did not agree, the Court issued its August 14, 2014 [Doc. No. 82] and October 2, 2014 Orders [Doc. No. 96].[12] Although Groark requested 20% of the available IA files, or approximately 340 files, and

---

[11] Atlantic City's appeal of the Court's Order was denied. See C.A. No. 12-1984 (RBK/JS), Doc. No. 117.

[12] Despite the Court's ruling Atlantic City refused and continues to refuse to commit to the number of IA files that comprise a "representative sample."

supported his request with the reports of his consultant, the
Court denied the request. The Court concluded that plaintiff's
request had no adequate support since the sum and substance of
his consultant's methodology was the summary conclusion that, "I
think that a 20% sample of those files should be adequate to
answer the questions that counsel has raised in our
discussions." See Aug. 14, 2014 Order at 2. The Court also
denied Groark's request for 340 files because "plaintiff has
already received the most important IA files in the case" (i.e.,
those of the defendant police officers), and that the importance
and relevance of the 340 IA files plaintiff requested was
disproportional to the burden and expense to produce the files.
Id. at 3-4; see also Oct. 2, 2014 Order at 2. Instead, the Court
directed Atlantic City to produce a random sample of 32 IA
files. See Aug. 14, 2014 Order at 7.

Turning back to this case, the Court has already decided
most of the discovery disputes that typically plague Atlantic
City's § 1983 cases. These include issues such as whether IA
files other than for the July 21, 2012 incident at issue have to
be produced (yes), whether all IA files of the defendant police
officers must be produced (yes), whether all categories of IA
complaints are relevant and not just excessive force complaints
(yes), and whether post-incident IA files must be produced

9

(yes).[13] The core issue that now has to be decided is how many IA files should be produced. Plaintiff wants all of the IA files but in the alternative is requesting 721. Atlantic City objects to producing any additional IA files but grudgingly agrees to produce 32.

An important point still needs to be mentioned. As discussed on numerous occasions with the parties, the reason plaintiff is requesting additional IA files is because of Atlantic City's insistence that it reserves its right to argue at trial that the IA files produced to date are not representative of its IA process. In other words, that plaintiff did not review enough IA files to get an adequate or representative picture of Atlantic City's IA process. If Atlantic City had agreed that the files produced thus far are representative, plaintiff did not need or want to review more IA files.[14] Atlantic City did not agree. Further, if Atlantic City had agreed that a specific number of IA files were

---

[13] Depending on which counsel represents Atlantic City at the time, the Court is faced with all or some of these arguments in Atlantic City's cases. Given that different arguments are presented in different cases, it does not appear that Atlantic City has a consistent position with regard to the production of its IA files.

[14] Plaintiff's counsel stated: "Your Honor, if the defendants would agree that whatever conclusions we draw from Officer Wheaten's Internal Affairs history is – establishes our Monell claim, we can be done here today." Dec. 12, 2014 Transcript ("Tr.") 33:20-23.

representative, even if that number is substantially less than 721, plaintiff would have agreed to the limited production. Thus, if Atlantic City would have agreed that the IA files produced to date plus the 32 files produced in Groark comprised a representative sample, plaintiff would have limited her request to only 32 IA files. Atlantic City did not agree. As is its right, Atlantic City steadfastly refuses to commit to how many IA files comprise a "representative sample." Thus, it is left to the Court to determine the number of IA files to be produced.[15]

---

[15] Atlantic City can't make up its mind about what it wants to do. Although it has consistently refused to acknowledge that plaintiff has enough files to adequately evaluate its IA process, its recent brief seems to take a different position. Atlantic City writes:

> As a result, on behalf of the City, we propose the solution that Plaintiff has sufficient discovery to have a reasonable opportunity to prove the allegations of the Complaint from the internal affairs files of the defendant officers. If the Court believes that the individual defendant officers are not a fair cross section for Plaintiff to seek to prove her case, then a number like 32 or 25 is a fair number which balances the burden on the City and the intrusion on the privacy and confidentiality rights of the complainants and targets of these investigations to be free from having their closed cases re-opened, scrutinized and litigated, against the real need for the discovery in relation to the allegations pleaded in the Complaint.

Jan. 30, 2015 Letter Brief ("LB") at 24-25. By making the statement that plaintiff already has a reasonable number of files or a fair cross-section, Atlantic City is explicitly or implicitly representing that it will not challenge the number of files plaintiff reviewed. If Atlantic City had made this

At plaintiff's request the Court held an evidentiary hearing to address how many IA files should be produced.[16] Dr. Shane testified for plaintiff.  Lt. Hendricks from the ACPD and Atlantic City's expert, Dr. Bernard Lentz, testified for Atlantic City. Their testimony will be summarized, infra.

Discussion

    1.   Relevance of Atlantic City's IA Files

Although it is beyond peradventure, the Court will provide a brief background as to why Atlantic City's IA files are critically important. Plaintiff is pursuing a Monell claim against Atlantic City. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Pursuant to Monell Atlantic City may be liable for an unconstitutional policy or custom. As to policy, municipalities like Atlantic City are liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance,

---

representation in court or directly to plaintiff, it is probable this Opinion and the past few months of wrangling would not have been necessary. In view of Atlantic City's failure to give a "straight answer" and the work that has already been done, the Court's ruling will stand unless plaintiff and Atlantic City stipulate to an alternative production. In other words, the Court will not backtrack unless plaintiff agrees. The Court does not blame plaintiff if she does not compromise with defendant. Atlantic City had an opportunity to compromise before plaintiff spent a substantial amount of time and resources to pursue her discovery request.  Plus, plaintiff's preference all along was to review all of Atlantic City's IA files.

[16] The hearings were held on December 12, 2014 and February 2, 2015.

regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690. As to custom, municipalities may be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision[-]making channels." Id. at 690-91. Liability based on a custom rather than a formal adopted policy proceeds on the theory that the relevant practice is so widespread as to have the force of law. Board of County Com'rs. of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997). Custom may also be established by proof of knowledge and acquiescence. McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). The Supreme Court has recognized that where a violation of federal rights is a "highly predictable consequence" of an inadequate custom in a situation likely to recur, municipal liability may attach based upon a single application of the custom. Monaco v. City of Camden, C.A. No. 04-2406 (JBS), 2008 WL 8738213, at *7 (D.N.J. April 14, 2008) (citing Board of County Com'rs, 520 U.S. at 409-10 (1997)).

In order to impose § 1983 liability pursuant to a custom, "plaintiff must show that the municipal action was taken with the requisite degree of culpability and [there must be]... a direct causal link between the municipal action and the deprivation of federal rights." Board of County Com'rs, 520 U.S. at 404. A pattern or continued adherence to an approach that a

municipality knows or should know has failed to prevent tortious conduct of police officers may establish "the conscious disregard for the consequences of [its] action – the 'deliberate indifferences' - necessary to trigger municipal liability."  Id. at 407.

One focus of plaintiff's case is Atlantic City's internal affairs process. The goal of internal affairs "is to ensure that the integrity of the department is maintained through a system of internal discipline where an objective and impartial investigation and review assure fairness and justice." N.J. Attorney General Internal Affairs Policy & Procedures[17] ("IAPP") (revised July 2014) at 12. "Achieving the desired level of discipline within the law enforcement agency is among the most important responsibilities of the law enforcement executive." Id. at 6. The IAPP recognizes the importance courts put on the IA function:

> [T]he courts, particularly the federal courts, have
> focused on the importance of the internal affairs
> function. They have come to perceive this function as
> an important means of protecting the constitutional
> rights and civil liberties of the state's citizens.

Id. at 3. This is understandable since "indifference to the internal affairs function will have a negative impact on the

---

[17] The most up to date policy is available at www.nj.gov./oag/dcj/agguide/internalaffairs.

administration of criminal justice and the delivery of police services to New Jersey's citizens." Id. at 5.

Like all municipalities in New Jersey, Atlantic City is required to adopt and implement an internal affairs process to investigate and resolve complaints of police misconduct. See generally Groark I, 989 F. Supp. 2d at 384-86. The IA process must (1) provide for a "meaningful and objective investigation of citizen complaints of police misconduct"; (2) monitor and track police misconduct, and (3) correct officer misconduct. Id. at 384. The Attorney General requires that certain critical performance standards be implemented and followed to meet these requirements. Amongst the standards that must be met are detailed recordkeeping requirements. If followed, the requirements will document that a thorough and impartial investigation was done. Id.

Amongst other issues, plaintiff is taking direct aim at Atlantic City's IA process and its alleged custom of exonerating and failing to adequately monitor its rogue police officers. Plaintiff's second amended complaint alleges:

> 62. Defendant Atlantic City permitted, encouraged, tolerated, and knowingly acquiesced to an official pattern, practice, and/or custom of its police officers . . . of violating the constitutional rights of the public at large, including the Plaintiff. In particular, the City of Atlantic City had actual knowledge that defendant had a propensity to deprive the citizens of Atlantic City, New Jersey of their constitutional rights and failed to take proper action

to protect the citizens of Atlantic City, New Jersey
from defendant.

. . .

65. Defendant Atlantic City is directly liable for
the Plaintiff's damages due to the following policies,
practices, or customs . . .;

> a. [A]llowing police officers . . . to
> employ excessive force while effectuating
> arrests . . . ;
>
> b. [A]llowing police officers . . . to use
> excessive force and/or unreasonable force
> without fear of discipline . . . ;
>
> c. [A]llowing police officers … to falsely
> arrest and charge civilians without probable
> cause as a tool to conceal their own illegal
> and unreasonable conduct . . . ;
>
> d. [A]llowing police officers … to file
> false police reports, fabricate evidence,
> destroy evidence, and make false statements
> . . . ;
>
> e. [F]ailing to protect the Citizens of
> Atlantic City from the unconstitutional
> actions of police officers … by exonerating
> rogue police officers, by refusing to
> investigate civilian complaints, and by
> convincing civilians not to file formal
> complaints with the Internal Affairs Unit .
> . . ;
>
> f. [R]efusing to adequately respond to and
> investigate complaints regarding officer
> misconduct by the citizenry . . . ;

66. Defendant Atlantic City is directly liable for
Plaintiff's damages due to the following policies or
customs of inadequate training, supervision,
discipline, screening, or hiring, which were in effect
at the time of this incident and which were the
underlying cause of the Plaintiff's injuries:

a. [Failing] to adequately train and supervise police officers . . . regarding proper arrest procedures and techniques; use of force; probable cause determinations; criminal investigations; and internal affairs procedures . . . ;

b. [Failing] to adequately monitor and evaluate the performance of its officers … and [their] compliance with the laws and policies, practices and customs with respect to probable cause determinations, internal affairs procedures, the use of physical force; arrest procedures, . . . ;

c. [Failing] to properly discipline its officers … with respect to violations of the law of the State of New Jersey, the Constitution of the United States, and its own policies on use of force, probable cause determinations, internal affairs procedures, preservation of evidence, and arrest procedures creating a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated, condoned, and accepted by the Atlantic City Police Department in deliberate indifference to and reckless disregard of the public at large, including the Plaintiffs;

. . .

e. Atlantic City and the Atlantic City Police Department knew that "a code of silence" existed between and among their officers and with security personnel employed by Atlantic City casinos . . . whereby officers would not report misconduct of other officers to their superiors and failed to take steps necessary to break the "code of silence"[.]

Plaintiff alleges that because Atlantic City's IA process is a sham it has a custom of not adequately monitoring and

tracing the performance of individual officers. Further, that because of the inadequate IA process Atlantic City has a custom of tolerating and acquiescing in its police officers' unconstitutional conduct which violates citizens' rights. If proven, plaintiff's arguments are supported in the case law. "[T]olerance of unconstitutional conduct is tantamount to encouragement of such conduct[.]" Foley v. City of Lowell, Mass., 948 F.2d 10, 14-15 (1st Cir. 1991) (citation omitted). Further, "if a city fails to either punish officers or change procedures after particularly egregious police conduct, this subsequent acceptance of the dangerous behavior by the policymaker tends to prove a preexisting policy." Skibo v. City of New York, 109 F.R.D. 58, 65 (E.D.N.Y. 1985).

Although it should be obvious, in order to prove her Monell allegations it is essential that plaintiff be permitted to review Atlantic City's IA files. Scouler v. Craig, 116 F.R.D. 494, 496 (D.N.J. 1987) ("[T]here can be no question of the relevancy of [the IA files] to the allegations of the complaint" particularly where the complaint alleges inadequate supervision and training under § 1983.). Indeed, the IA files are vital to plaintiff's Monell allegations. Groark I, 989 F. Supp. 2d at 393. As the Court noted in Groark I, "the requested IA files are fair game for discovery because they are directly relevant to plaintiff's claim that Atlantic City's IA process is a sham and

18

that Atlantic City failed to properly train its officers." Id. at 394. This explains the unremarkable fact that production of IA files is routinely ordered in § 1983 cases.

Atlantic City's IA process must be "real" and the investigation "meaningful and objective." Id. at 386. The mere existence of a grievance procedure does not protect a citizen's constitutional rights. Id. at 394. Plaintiff's review of Atlantic City's IA files will reveal whether in fact the IA process is a sham. The requested files are also directly relevant to Atlantic City's defense that its IA procedures are adequate. Id. at 394. Only by looking at the content of the IA files can plaintiff learn whether Atlantic City's investigations were "real," "meaningful," and "objective." Id.[18] Further, plaintiff must review Atlantic City's IA files to be able to compare the facts in this case to other cases. This is necessitated by applicable precedent. According to numerous cases, in order to make out a Monell claim, plaintiff "must show why . . . prior incidents deserved discipline and how the misconduct in those situations was similar to the present one. Merman v. City of Camden, 824 F. Supp. 2d 581, 591 (D.N.J. 2010) (citation omitted); Franks v. Cape May County, C.A. No. 07-6005

---

[18] Each IA file should contain a "written report consisting of an objective investigative report recounting all of the case's facts and a summary of the case, along with conclusions for each allegation, and recommendations for further action." IAPP at 40.

19

(JHR/JS), 2010 WL 3614193, at *12 (D.N.J. Sept. 8, 2010) ("[A]
plaintiff must show why . . . prior incidents deserved
discipline and how the misconduct in those case is similar to
that involved in the present action"; Katzenmoyer v. Camden
Police Department, C.A. No. 08-1995 (RBK/JS), 2012 WL 6691746,
at *12 (D.N.J. Dec. 21, 2012). Further, as the Court noted in
Reid v. Cumberland County, 34 F. Supp. 3d 396, 403 (D.N.J.
2013), "a plaintiff must show why those prior incidents deserved
discipline and how the misconduct in those situations was
similar to the present one." Plaintiff cannot satisfy her burden
of proving a Monell claim without looking at the content of
Atlantic City's IA files. Production of the files is critical to
plaintiff's case.

     2.   Whether 721 IA Files Should be Produced?[19]

     Having established that Atlantic City's IA files are
relevant and discoverable, the question then becomes how many IA
files should be produced. The Court concludes that plaintiff has
made a convincing case for why she is entitled to at least 721
files. Taking notice of the Court's decision in Groark II that
it would not direct Atlantic City to produce all of its IA
files, plaintiff retained Dr. Jon M. Shane to produce a report

---

[19] Although not discussed in detail herein, it is obvious
that the Court finds that under the circumstances of this case
the law enforcement privilege does not bar discovery of the
requested files. See Groark I, 989 F. Supp. 2d at 389-93.

to help identify "patterns and practices with respect to Internal Affairs investigations in the [ACPD]" (Dec. 12, 2012 Tr. 40:4-8), and how many IA files Dr. Shane needed in order to review a "representative sample."[20] Id. 9:2 to 10:19. Shane teaches a graduate level statistical course at the John Jay College of Criminal Justice. Shane was formerly employed as a longtime member of the Newark Police Department where he reached the rank of Captain when he retired in 2005. Shane professes to have detailed knowledge regarding local, state and national norms regarding Internal Affairs policies. Dec. 12, 2014 Tr. 39:2-23. Without getting into the nuances of Dr. Shane's reports and testimony, Dr. Shane ultimately concluded he needed to

---

[20] See Groark II, 2014 WL 3556367, at *1 ("Although the Court denies plaintiff's request for all of Atlantic City's IA files, it directs Atlantic City to produce a 'representative sample'[.]").

review 721 files to do his analysis.[21] Shane also set forth a procedure to assure that the 721 files are randomly selected.[22]

Shane proposes to perform two general types of analysis on Atlantic City's IA files: a process or a qualitative analyses and a multiple regression statistical analysis. As to the former, Shane will examine the IA files to evaluate Atlantic City's compliance with the applicable New Jersey Attorney General Guidelines for conducting IA investigations. The statistical analyses will test plaintiff's hypotheses and determine if certain conduct and actions were predictable. In general, Shane is "trying to capture . . . the overall picture of how [Atlantic City's] Internal Affairs investigations play themselves out." Id. 92:17-19. This will include an analysis of whether Atlantic City's IA process conforms to state and national norms. Id. 104:20-23.

---

[21]     Dr. Shane's analysis may test several preliminary hypotheses plaintiff is exploring such as (1) whether Atlantic City is more likely to sustain internal complaints made by fellow police officers as opposed to citizen complaints, (2) Atlantic City's dismal record of sustaining excessive force complaints, and (3) the high incidence of excessive force complaints involving the Police Department's Special Employment Detail. Dec. 12, 2012 Tr. 107:1-116:10. The actual hypotheses to be tested from looking at Atlantic City's IA files has not yet been decided. Id. 99:1-4.

[22]     See id. 69:2 to 71:13. The 721 files comprise 36 percent of the universe of 2,002 total IA files for the relevant time period. Id. 69:22 to 70:3.

Having studied Dr. Shane's reports and hearing his live testimony, the Court finds his testimony sufficient to justify plaintiff's discovery request. Further, plaintiff's request is not out of line with IA productions in other cases. Torres v. Kuzniasz, 936 F. Supp. 1201, 1214 (D.N.J. 1996) (ordering production of 1,200 files); Foley v. Boag, C.A. No. 05-3727 (SRC) 2006 WL 6830911, at *3 (D.N.J. May 31, 2006) (requiring production of all internal affairs records and complaints against all police officers in the defendant municipality for ten (10) years); see also Weller v. Am. Home Assur. Co., C.A. No. 05-0090, 2007 WL 1097883, at *4-5 (N.D.W. Va. 2007) (overruling objection despite claim that responding to discovery would be a "Herculean task" that would take "at least hundreds of man hours."). Accordingly, the Court grants plaintiff's discovery request asking Atlantic City to produce 721 randomly selected IA files.

3. Atlantic City's Arguments

Atlantic City makes four general arguments why it should not have to produce any more IA files. First, Atlantic City argues that plaintiff must make a "preliminary showing" of Monell liability before she receives more IA files. In the alternative, it argues plaintiff's Monell claim should be

23

bifurcated.[23] In other words, Atlantic City wants to stop IA discovery in its tracks until after a hearing or motion regarding whether an adequate "preliminary showing" has been made, or until after a jury verdict. Second, Atlantic City argues it is burdensome to produce more IA files. Third, Atlantic City argues no more than the 32 files produced in Groark should be produced here. Last, Atlantic City argues Dr. Shane's opinions are flawed and should be disregarded. All of Atlantic City's arguments are rejected.

### A.   Requiring Plaintiff to Make a "Preliminary Showing" or Bifurcation

Especially under the circumstances of this case, Atlantic City's argument that plaintiff must make a "preliminary showing" of Monell liability or the case should be bifurcated is impractical, unnecessary and inefficient. Atlantic City has not set out in detail its "preliminary showing" proposal except to say that plaintiff has to make out a "preliminary showing" of a Monell violation before getting more IA files. What type of showing must be made or the evidentiary standard to be met is not mentioned. According to Atlantic City, before plaintiff is entitled to more IA discovery she must demonstrate a viable Monell claim from only the information she has received to date. No matter what standard and evidentiary burden Atlantic City

---

[23] See Dec. 12, 2014 Tr. 23:14-19; 26:2-14; 32:12-18.

concocts, its proposal adds a procedural hurdle to obtaining relevant discovery that does not exist in the Rules. The proposal will undoubtedly delay the progress of the case, delay ongoing discovery, and result in even more discovery disputes. The discovery tools available pursuant to Fed. R. Civ. P 26(b)(2)(C) already give the Court the flexibility it needs to prevent discovery abuses and to assure that proportional discovery is taken. The Court need not stagger or bifurcate discovery to protect Atlantic City's interests. Atlantic City is well aware that it has been ordered to produce its IA files in a substantial number of § 1983 excessive force cases. In not one of the cases did Atlantic City request, nor did the court order, the "preliminary showing" it now proposes. Further, Atlantic City cites no persuasive case law to support its request.

To the extent Atlantic City wants to be assured plaintiff is not on a "wild goose chase", the Court is already satisfied this is not the case. In <u>Groark II</u>, 2014 WL 3556367, at *5, a case involving an analogous fact scenario and essentially the same cast of characters, the Court wrote that if plaintiff was on a "fishing expedition" the Court would not hesitate to limit his discovery requests. <u>See</u> Fed. R. Civ. P. 26(b)(2)(C)(iii) (the Court must limit the extent of discovery if it determines the burden or expense of the proposed discovery outweighs its likely benefit). The same is true here. As the Court indicated

in Groark, the non-frivolous nature of plaintiff's claims is evidenced by the fact that scores of complaints have been asserted against Atlantic City's police officers who were never disciplined. "Tolerance of unconstitutional conduct is tantamount to encouragement of such conduct and is therefore a basis for municipal liability." Skibo, 109 F.R.D. at 65. In addition, "if a city fails to either punish officers or change procedures after particularly egregious police conduct, this subsequent acceptance of the dangerous behavior by the policymaker tends to prove a preexisting policy". Id. There is already enough evidence in the record to make out "preliminary showing" of a prima facie case of a Monell violation. Put another way, the evidence is sufficient to show something is "rotten in Denmark." Plaintiff need not further justify her request for relevant discovery.

The Court is not done demonstrating that plaintiff need not make out another "preliminary showing" of Monell liability to obtain relevant Monell discovery. In Groark, plaintiff's counsel represented that only a miniscule percentage of Atlantic City's reported excessive force complaints were sustained or resulted in any discipline. Although in and of itself these statistics are not enough to impose liability on Atlantic City (see, e.g., Katzenmoyer v. Camden Police Department, C.A. No. 08-1995 (RBK/JS), 2012 WL 6691746, at *5 (D.N.J. Dec. 21, 2012); Troso

v. City of Atlantic City, C.A. No. 10-1566 (RMB/JS), 2013 WL
6070028, *1 (D.N.J. Nov. 15, 2013)), they lend credence to
plaintiff's claims that there is good cause to believe Atlantic
City's IA process is deficient. Again, while statistics alone
may not be sufficient to prove a Monell claim at trial, for
discovery purposes it is reasonable to infer something may be
amiss when so many excessive force citizen complaints and § 1983
lawsuits are filed against Atlantic City. For discovery
purposes, plaintiff clearly has good cause to believe something
is amiss with Atlantic City's internal affairs process when
hundreds of citizen complaints do not result in discipline.[24]

The Court is not alone in finding that a "preliminary
showing" has already been made that Atlantic City's IA process
is deficient. When Atlantic City's summary judgment motion was
denied in Cordial v. Atlantic City, C.A. No. 11-01457 (RMB/AMD),
2014 WL 1095584 (D.N.J. March 19, 2004), the decision also
called into question Atlantic City's IA process. The Court wrote
that the plaintiff "presented evidence from which a reasonable

---

[24] Given this record one wonders how many citizens decided
not to file internal affairs complaints for excessive force or
false arrest based on their perception of Atlantic City's white-
washing. In Adams v. City of Atlantic City, C.A. No. 13-7133
(JBS/AMD), Adams alleged in his November 22, 2013 complaint that
police officers assaulted him without provocation on June 17,
2011, and that after he filed an internal affairs complaint with
the ACPD, police officers and their canine dogs brutally
attacked him on February 28, 2012, in retaliation for filing the
complaint. See Compl. [Doc. No. 1].

jury could infer that [Atlantic City's] IA investigation process is designed to insulate the accused officers from penalty." Id. at *6. The decision also noted that Atlantic City's IA reports reflected that the "complainant was not always interviewed, officers were only asked to provide a written statement, and officer statements were given much greater weight than civilian statements." Id. The Court held:

> From this evidence, a reasonable jury could find that the IA investigations were insufficient or inadequate and that Atlantic City exhibited deliberate indifference to the risk that its officers would use excessive force in a manner similar to that alleged here.

Id. at 6.

The plaintiff's expert report in Groark also evidences the non-frivolous nature of Costantino's Monell claim. The Court summarized the expert's conclusions:

> [T]here was a "catastrophic failure of [Atlantic City's] Internal Affairs to impartially and thoroughly investigate [the] subject officer(s) of citizen complaints." He opines that Atlantic City's "police officers engaged in misconduct or criminal acts with impunity and little or no oversight of the officers of Internal Affairs." Id. He also opines that, "[t]he pattern of inadequate and biased (in favor of subject officers) IA investigations allowed Timek and Wheaton to continue their misconduct unchallenged throughout their careers culminating in more than six dozen IA cases adjudicated with "not sustained" or "exonerated" investigative findings." [The expert also concluded that] Atlantic City's IA findings involving Timek and Wheaten "are deliberately flawed and intentionally inadequate in favor of the officers and coincides with an organizational culture that encourages misconduct and corruption."

28

Groark II, 2014 WL 3556367, at *6.

Based on the foregoing, the Court is convinced that plaintiff's request for more IA files is justified, necessary, and proportional to her needs and the importance of the evidence. Plaintiff does not need to go through the unnecessary hurdle of making another "preliminary showing" to obtain relevant and responsive discovery, especially when the alleged misdeeds of the ACPD has already been thoroughly laid out in reported decisions.

To the extent Atlantic City wants to bifurcate the case the proposal is also rejected. It makes no sense to first try the case against the defendant police officers and then only if a liability verdict is returned does plaintiff get additional Monell discovery. This would substantially delay the ultimate resolution of the case and would require duplicative discovery. In fact, the Court previously denied a request to bifurcate a similar case. In D'Arrigo v. Gloucester City, C.A. No. 04-5967 (JBS), 2007 WL 4440222 (D.N.J. Dec. 17, 2007), the plaintiff brought a § 1983 excessive force case against the Gloucester City Municipal Police Department and individual police officers. Before trial Gloucester City moved to bifurcate the Monell claim from the case against the individual defendants Gloucester City argued prejudice would result from a joint trial. It also argued

efficacy and judicial economy would result from bifurcation. Like this case the Court soundly rejected the proposal. The reasoning in D'Arrigo is equally applicable here:

> The Court rejects defendants' argument that separate trials would be more convenient and efficient. Two trials would necessarily involve an overlap of witnesses and evidence which would result in a duplication of effort.
> . . .
> It is not unusual in § 1983 cases for plaintiffs to pursue claims against individual defendants while at the same time pursuing a Monell claim against a municipality. This case presents no unusual or special circumstances that justify bifurcation. If [the] Court granted bifurcation in this case, it would in essence be agreeing that as a matter of routine bifurcation should be granted in cases of this type. This practice is not permitted. Lis v. Robert Packer Hospital, 579 F. 2d 819, 824 (3d Cir. 1978) (a routine order of bifurcation is a practice at odds with the requirement that discretion be exercised and seems to run counter to the intention of the rule drafters).

Id. at *3, 4. The Court also noted, "[t]here are less burdensome ways to deal with [the] situation, including use of a special verdict form, a well-adapted jury charge, and carefully crafted limiting instructions." Id. (citation omitted).

The Court recognizes that there are cases around the country that grant bifurcation of Monell claims. Id. at *3. This is not surprising because "[s]ince the decision whether to bifurcate requires a fact-intensive analysis left to the sound discretion of the court, based on the facts in a specific case, different courts are bound to rule that bifurcation is

appropriate." Id. at *3. Nevertheless, substantial authority exists to deny bifurcation motions. Id.

Notably, Atlantic City has not cited a single New Jersey District Court police § 1983 case where bifurcation was granted, including the scores of cases where it was a named defendant. The Court is not surprised by the fact that there is no applicable New Jersey precedent and not one Atlantic City case where bifurcation was ordered. The Court has no intention of breaking this streak.

B.   Burden

Atlantic City's argument that it would be unduly burdensome to produce the requested IA files has been soundly discredited. Before it changed counsel the focus of Atlantic City's objection to producing more IA files was that it would be burdensome. To finally get to the bottom of this argument and to avoid relying upon conclusory affidavits, the Court ordered Atlantic City to produce a witness to support its argument. Atlantic City produced Lt. Hendricks, the commander of the ACPD's legal unit who recently assumed command duties in the internal affairs office. Tr. (v2) 4:20 to 5:1.[25] Unfortunately for Atlantic City,

---

[25] The transcript of the December 12, 2014 hearing is split into two volumes that are not consecutively numbered. The designation v2 refers to the second volume. To be clear, there is no evidence Lt. Hendricks had an internal affairs role when the relevant events occurred in this case or the 30 other currently pending Atlantic City § 1983 cases.

although Hendricks's testimony was direct, straightforward and credible, the testimony completely discredited Atlantic City's previous untested assertion that it was burdensome to produce its IA files. Hendricks testified that Atlantic City's IA files are "not disposed of" (id. 10:23-25) and they are "organized sequentially by number in the IA Office" (id. 11:1-10). These IA files are easily retrievable as evidenced by Hendricks' acknowledgment that the files are located in his office and it is not burdensome to locate and pull the IA files. Id. 11:11-16. According to Hendricks, the only burden to produce IA files is in regard to the time it takes to copy the files. Id. 11:17-22.

The problem with Atlantic City's burdensome argument is that its burden is its own doing. The reason it is burdensome for Atlantic City to copy IA files is because it only has one civilian clerk to do all the paperwork in its Legal Unit and "any file production that has to be done falls on her[.]" Id. 6:12-16. Thus, if copying IA files has to be done the clerk has to fit it in between her other duties such as coordinating with investigators and sending cases back and forth to the Prosecutor's Office. Id. 6:11-16. Given the clerk's duties she has to fit copying IA files in "after hours for overtime." Id. 7:13-18. And to top it off, Atlantic City is in financial distress and they may not approve overtime for the clerk. Id. 7:15-18.

Atlantic City's excuse for not being able to produce copies of its IA files is preposterous. Given its critical importance to protecting citizens' rights Atlantic City's IA Unit should not be treated like the proverbial "stepchild." "Indifference to the internal affairs function will have a negative impact on the administration of criminal justice and the delivery of police services to New Jersey's citizens." IAPP at 5. In order to adequately respond to discovery in civil litigation all parties incur unwanted burdens and costs. Nevertheless, a party cannot shirk its responsibilities by failing to dedicate sufficient resources to respond to appropriate and necessary discovery. If the situation were otherwise the Court would be bombarded with excuses for why relevant discovery does not have to be produced. Further, if Atlantic City was able to shirk its responsibilities so easily, it would encourage other parties to avoid discovery. The fact that a party must devote reasonable resources to respond to legitimate discovery requests is simply a necessary evil that all litigants must endure. It is certainly not plaintiff's fault that Atlantic City has an inordinate number of citizen complaints about its police officers which results in a substantial number of IA files.

The Court has no sympathy for Atlantic City's argument that it does not have to produce relevant discovery because it is burdened by the fact that it has too many citizen police

complaints and § 1983 lawsuits. In a serious lawsuit challenging the ACPD and its IA process, it is ironic that Atlantic City argues it should not have to produce more discovery because it has too many citizen complaints and IA files. The argument is akin to the old saw about the son who kills his parents and then complains because he is an orphan. "Since [Atlantic City] created this situation . . . it seems only reasonable that [Atlantic City] should bear the burden of any inconvenience resulting from the situation it has created." <u>Calabrian Co. v. Bankok Bank, Ltd</u>., 55 F.R.D. 82, 87 (S.D.N.Y. 1972). The Court agrees with plaintiff:

> [T]he City's overly burdensome argument should carry little to no weight. ACPD should not be rewarded for maintaining a police force that has accumulated such a shocking number of internal affairs complaints [and § 1983 lawsuits] that the mere act of copying the files is overly burdensome.

Jan. 31, 2014 LB at 2 [Doc. No. 124].

The Court is not oblivious to the fact that Atlantic City is experiencing financial difficulties and copying the requested files will take time and money. However, these facts do not establish an unreasonable burden. The Court fails to see how it is burdensome for a low level employee to stand at a photocopy machine and copy documents that are easily retrievable and organized sequentially. It is unacceptable for a defendant to avoid legitimate discovery because it does not devote reasonable

resources to defending a case. As Justice Cardozo wrote, it is fundamental that "[h]e who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned.[]" R.H. Stearns Co. v. United States, 291 U.S. 54, 61, 54 (1934) (quoting Dolan v. Rodgers, 149 N.Y. 489, 491, 44 N.E. 167 (1896)). It is patently unreasonable to rely on one citizen clerk to copy all discovery documents especially when the clerk has to "fit in" her copying between all her other duties. The Court will not stand for this excuse.

This Court is not alone in insisting that a party devote sufficient resources to defending a case. The Court's colleague faced a similar situation in Reid, supra. In that case the plaintiff brought a § 1983 excessive force lawsuit against the Cumberland County Department of Corrections ("CCDOC") and several Correction Officers. In discovery the plaintiff asked for the excessive force complaints and files of all the CCDOC's officers for a four-year time period. In opposition the CCDOC argued it was burdensome to produce the requested records because, inter alia, it would take 140 hours to produce the records. In addition, the CCDOC argued it did not have adequate personnel to copy the files and if required to produce the files in "would effectively 'shut down' their department." 34 F. Supp. 3d at 413. Like this case, the Court shot down these arguments. The Court wrote:

> [T]he fact that the department responsible for conducting such a search is not adequately staffed to handle the necessary search, do[es] not excuse production of those documents when the location of the documents and the understaffing of the department is partly the cause of any burden on CCDOC. Permitting a party to avoid discovery simply by keeping files in a disorderly or unsearchable manner would improperly benefit the producing party while precluding the requesting party from obtaining clearly relevant material.

Id. at 414-15 (citations omitted) (collecting cases); see also A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co., C.A. No. 07-929, 2013 WL 6044333, at *11-12 (D. Conn. Nov. 14, 2013) (finding that while an insurance agency claimed undue burden due to the amount of information sought, its small staff size, and its limited resources and that production of the documents "would prevent [them] from performing [their] core functions," it was not unduly burdensome, adding that the information was "probative of central issues in the case"); Ohio Citizen Action v. City of Englewood, C.A. No. 05-263, 2008 WL 3889967, at *2 (S.D. Ohio Aug. 19, 2008) (holding that plaintiff's burden argument was unavailing as the organization had merely shown that it had a "relatively small staff and one staff member [was] on maternity leave"); Beach v. City of Olathe, Kansas, 203 F.R.D. 489, 493-94 (D. Kan. 2001) (overruling objection where responding to interrogatory required hundreds of hours of document review of internal affairs and personnel files); Beach v. City of Olathe, 203 F.R.D. 489, 493-

94 (D. Kan. 2001) (overruling objection where responding to interrogatory required hundreds of hours of document review); Weller v. Am. Home Assur. Co., 2007 WL 1097883 *4-5 (N.D.W. Va. 2007) (overruling objection despite responding party's affidavit which stated response would entail "a least hundreds of man hours").

The two cases Atlantic City cites to support its argument are inapposite. In Skibo v. City of New York, supra, the Court denied the plaintiffs' request for 1,300 files as burdensome and instead ordered 150 files produced. 109 F.R.D. at 65. However, unlike in Skibo, here Atlantic City's burdensome argument has been discredited. Further, the parties' experts agree that disclosure of all IA files results in the most accurate analysis. Also, unlike in Skibo, Atlantic City reserves its right to argue plaintiff did not review enough IA files. The same factors that distinguish this case from Skibo also distinguish this case from Alli Katt v. the N.Y.C. Police Department, 95 Civ. 8283 (LMM), 1997 U.S. Dist. LEXIS 10014 (S.D.N.Y. July 14, 1997), the employment discrimination and harassment case Atlantic City relies upon.

C. Groark

Having dismissed all efforts to reach a reasonable compromise on the number of IA files to produce, Atlantic City cites to Groark, supra, to support its grudging agreement to

37

produce another 32 IA files. As noted, that is the number of additional IA files the Court directed Atlantic City to produce in the case. The Court self-selected the number after the plaintiff failed to produce persuasive evidence that the files he requested was necessary.

The Court declines to act in lockstep with Groark for two main reasons. First, unlike Groark, plaintiff has supplied evidence that more files should be produced. In Groark the plaintiff submitted a letter from his expert summarily concluding that 340 files should be produced. Here, however, plaintiff produced a detailed expert report and presented credible supporting testimony at an evidentiary hearing. This evidence persuades the Court that plaintiff's methodology and approach is sufficiently credible to justify the requested discovery. The plaintiff's evidence in Groark did not pass this threshold.

Another reason this case is different than Groark is that the Court now has a fuller understanding of Atlantic City's burdensome argument. The argument has been completely discredited. When the Court ruled on the number of IA files to produce in Groark the Court was under the mistaken belief that it was legitimately burdensome to Atlantic City to produce its IA files. See Groark II, 2014 WL 3556367, at *9. The Court did not know at the time that Atlantic City was not dedicating

meaningful resources to responding to discovery. Since then the Court has been enlightened.

### D. Dr. Shane's Opinions

Atlantic City dismisses Dr. Shane's reports, testimony and conclusions and asks the Court to completely discount his opinions. The Court disagrees and finds that Dr. Shane's opinions carry sufficient weight and trustworthiness to support plaintiff's discovery request. Dr. Shane is a qualified statistician with substantial real world police experience. Although the Court is obviously not ruling on the admissibility of his opinions at trial, the Court found Dr. Shane's testimony to be relatively straightforward and sound. While Atlantic City disagrees with Shane, for discovery purposes Shane's opinions are logical, based on competent evidence, and sufficient to support plaintiff's discovery request. For the purpose of deciding the discovery dispute at issue, the Court finds Shane's opinion that 721 IA files should be produced to be reasonable. The Court does not need to find that Shane's opinions are admissible in evidence in order to rely upon them to decide this discovery dispute. "[I]n ruling on a discovery motion the Court is not limited to only relying upon admissible evidence". Groark II, 2014 WL 3556367, at *7 (citation omitted). At the appropriate time Atlantic City can assert its Daubert challenge to Dr. Shane; now is not the time.

In contrast to Dr. Shane, Dr. Lentz's report and testimony is not helpful. Dr. Lentz does not know what a representative sample is (Feb. 2, 2015 Tr. 32:18-20), and he repeatedly refused to identify the number of IA files that should be reviewed to determine if Atlantic City had a particular custom. Id. 33:19-35:18. Lentz testified:[26]

BY THE COURT:

Q --what if I use the term "custom or practice", and I said to you how many IA files does one have to look at to see if the Atlantic City Police Department has a custom or practice of conducting inadequate and insufficient IA investigations? If I phrased the question that way, can you tell me how many of the 1,800 some odd IA files would have to be looked at not see if there's a force of law, but if they have a custom or practice?

A Again, Your Honor, the concept of custom or practice is also not a term of statistical art with which I am familiar.

Q So -

A You know, it is not.

Q So the answer is -

A We may -- we may have as the -- a sense of what that is, we as individuals of what a custom is.

Q So is the answer you could not give me a number of how many IA files to review to determine if Atlantic City has a custom or practice of doing a particular thing?

A Not with -- not with any technical scientific statistical basis. I could say what my common sense is, sir.

_____

[26] The Court must unfortunately include long excerpts of Dr. Lentz's testimony because it was difficult to get him to respond directly to questions.

Q Okay. What if I said to you you may -- what if I define a custom as follows?

A Okay.

Q You may find that a custom exists if there was a practice that was so well-settled and widespread that the policy making officials of Atlantic City either knew or should have known of the practice? What if I said that to you? Could you give me a number?

A It -- not behaviorally. I could not. I could not, again, based upon statistics per se.

Q You still couldn't tell me if the universe is 18 so -- 1,800 some odd files, using this definition of custom, you still couldn't tell me how many files you would have to look at to see if there was a custom in Atlantic City of doing a particular thing?

A I mean, I'd have to say based upon the scientific knowledge that I have as a statistician, no, because it is not a statistical concept.

. . .

BY THE COURT:

Q What if I defined it this way? You may find an official custom by showing the existence of a practice is so widespread and well settled, that it constitutes a standard operating procedure of Atlantic City. How many files then would you have to look at?

A Same answer.

Q Still can't tell me?

A It is not -- you're not talking statistical concepts here, Your Honor.

Id. 33:19 to 35:18.

The fundamental mistake Atlantic City and Dr. Lentz make is their misreading of the Court's intent when it used the term "representative sample." The Court does not purport to be an expert statistician and will not abdicate its role to manage discovery to such an expert. This accounts for why the Court

41

never used the term "statistically representative sample." Instead, the Court used the term "representative" as it is defined in the dictionary. See www.merrianwebster.com ("typical of a particular group of people or of a particular thing"); www.macmillandictionary.com ("typical of people or things in a particular group"). Moreover, one need only conduct a basic internet search to see that the Court's use of the term "representative sample" has a logical common sense meaning. See investopedia.com/term ("A subset of a statistical population that accurately reflects the members of the entire population. A representative sample should be an unbiased indication of what the population is like"); www.businessdictionary.com/definition ("A small quantity of something . . . whose characteristics represent (as accurately as possible) the entire batch, lot, population, or universe"). This is exactly the meaning the Court intended.

Dr. Lentz's testimony is also not helpful because he could not and did not present an alternative to Dr. Shane's opinion to determine how many IA files should be produced to adequately analyze Atlantic City's IA process. Id. 63:21-64:2. This being the case, it is hard to understand the purpose of Dr. Lentz's testimony since he did not and could not shed any light on the key issue the Court has to decide. For example, Dr. Lentz testified:

> Q.   Okay, Second question, as you sit here today, you cannot tell this Court an alternative methodology for reaching a stratified random sample for the issues regarding the internal affairs process of the Atlantic City Police Department that we had discussed that are in the complaint and that have been the subject of these proceedings.
>
> A.   As I sit here today. [no].

Id. 63:21-64:2. Dr. Lentz did not even squarely address Atlantic City's argument that the IA files plaintiff already had, even with 32 additional files, is adequate for plaintiff's purposes. If the purpose of Dr. Lentz's testimony was to discredit Dr. Shane and to present a viable alternative, the effort was resoundingly unsuccessful. Even if Dr. Shane does not agree with the term "representative sample", it is astounding that he provided no helpful input on how many additional IA files should be produced. If he was of the opinion that plaintiff already had enough IA files, he kept this a secret. Plaintiff correctly pointed this out. See Jan. 31, 2015 LB at 2 ("Notably . . . Defendant's expert report does not posit how many files would provide sufficient data from which to make reliable conclusions about ACPD's internal affairs procedures." (emphasis in original)).

Atlantic City's critique of Dr. Shane's report raises a strawman and then attempts to knock it down. Dr. Shane is not offering his ultimate opinions for trial. Instead, Dr. Shane merely opined that 721 files should be produced if he could not

review everything. Dr. Shane is not, as Atlantic City suggests,
attempting to quantify the number or percentage of IA
transgressions that is sufficient to establish a custom under
Monell. See Jan. 30, 2015 Letter Brief ("LB") at 3-9 [Doc. No.
123]. This quantification is not necessary since the case law
already establishes what evidence is necessary to establish
liability. See Monell, 436 U.S. at 691 (the custom, pattern or
practice must be so persistent and widespread as to practically
have the force of law). The Third Circuit's Model Jury Charge
also evidences that plaintiff need not rely on statistics or
percentages to prove that Atlantic City had an unconstitutional
custom of acquiescing and tolerating its police officers'
unconstitutional conduct.  The charge reads:

    **4.6.6**

### Section 1983 –
### Liability in Connection with the Actions of Another
### Municipalities – Custom

[Plaintiff] may prove the existence of an official
custom by showing the existence of a practice that
is so widespread and well-settled that it
constitutes a standard operating procedure of
[municipality]. A single action by a lower level
employee does not suffice to show an official
custom.  But a practice may be an official custom if
it is so widespread and well-settled as to have the
force of law, even if it has not been formally
approved. [You may find that such a custom existed
if there was a practice that was so well-settled and
widespread that the policymaking officials of
[municipality] either knew of it or should have
known of it. . .]

There is no support for Atlantic City's argument that 90% of its IA files must be deficient to establish an unconstitutional custom.[27]

Despite plaintiff's detailed <u>Monell</u> allegations summarized earlier, Atlantic City persists in arguing that Dr. Shane's approach is not "consistent with the Court's discovery and pleadings rules." LB at 11. Atlantic City again misses the mark. Plaintiff is not, as Atlantic City posits, requesting discovery in an effort to support a new claim that has not already been pled. To the contrary, plaintiff's discovery is directed to the detailed allegations in the complaint. To obtain relevant discovery Dr. Shane did not have to specifically set forth his opinions and theories in his reports served thus far, especially when the reports were not intended to address the merits of the case but only the number of IA files that should be produced. The scope of relevant discovery is not framed by the four corners of Dr. Shane's preliminary report used for discovery purposes. Instead, it is axiomatic that plaintiff may obtain discovery regarding the claims in her complaint. Fed. R. Civ. P. 26(b)(1). The relevant inquiry is significantly broader at the

---

[27] <u>See</u> Jan. 30, 2015 LB at 6-7 ("We suggest that in accordance with the case law, the percentage would have to be in the mid to upper 90's, with perhaps something even greater than 90% of Atlantic City's internal affairs files being 'shoddy,' in order for the custom, pattern or practice of 'shoddy' investigations to have the force of law, like a formally adopted policy.").

discovery stage than at the trial stage. <u>Nestle Foods Corp. v.</u> <u>Aetna Cas. & Sur. Co.</u>, 135 F.R.D. 101, 104 (D.N.J. 1990). Plaintiff's complaint sets out in detail her <u>Monell</u> allegations, including her claims as to Atlantic City's internal affairs procedures. <u>See</u> Second Am. Compl. ¶¶ 61-69.

Atlantic City's argument that plaintiff's complaint is "not a source to which [it] can turn to see with any degree of clarity what Plaintiff means to have pleaded in the case" is meritless. LB at 18. Indeed, it is hard to fathom how plaintiff could be more specific. For example, plaintiff alleges Atlantic City has a practice or custom of using excessive force, falsely arresting and charging citizens, filing false police reports, "refusing to investigate civilian complaints, and . . . convincing civilians not to file formal complaints with the Internal Affairs Unit", and "refusing to adequately respond to and investigate civilian complaints." <u>Id.</u> ¶ 65. Plaintiff also alleges Atlantic City failed to adequately train its police officers as to internal affairs procedures, it failed to monitor and evaluate compliance with internal affairs procedures, it failed to properly discipline its officers which created a custom where "illegal and unconstitutional behavior is tolerated, condoned and accepted", allowing its officers to engage in conduct violating citizens' constitutional rights without fear of discipline. <u>Id.</u> ¶ 66. The Court is at a loss to

understand how plaintiff's complaint could be more specific. As already discussed in detail, Atlantic City's IA files are vital discovery for plaintiff's <u>Monell</u> claims that are pled in detail in the complaint.

### 4. All IA Files Should be Produced

Although the Court is granting plaintiff the requested relief, the main issue surrounding plaintiff's application remains unresolved. Plaintiff aims to show that Atlantic City's police officers were not properly monitored, investigated and disciplined. In order to make this showing plaintiff asked to examine a "representative sample" of approximately 2,000 IA files. Plaintiff's expert opined that a "representative sample" is 721 files. Despite the Court's urging for Atlantic City to come up with an alternative number of files which could be considered a "representative sample", it remained silent. As a result, Atlantic City will continue to dispute the legitimacy of the sample. Thus, even if plaintiff reviews another 721 IA files in an attempt to show a custom, pattern or practice, in Atlantic City's eyes the question will remain as to whether the sample has any meaning at all. Presumably, Atlantic City will continue to challenge the validity of the sample. Accordingly, the Court finds that the best course of action is to grant plaintiff's original request and compel Atlantic City to produce all of its IA files. This way, there will be no question later on as to

whether plaintiff examined a sufficient number of files to draw accurate findings about the IA process. This course of action is the most efficient means to move the case forward and remove lingering issues.

As the Court mentioned at the outset of this Opinion, the case has been plagued with discovery disputes regarding Atlantic City's IA files. The disputes have consumed substantial time and resources of the parties and the Court. Now, however, although the Court has ruled that an additional 721 IA files have to be produced, the fact of the matter is that needless disputes regarding the IA files will persist. Even after the 721 files are produced Atlantic City will argue that this is not a sufficient representative sample, which will inevitably result in a round of in limine and Daubert motions before and during trial. This occurrence leads the Court to revisit plaintiff's original discovery request for all of Atlantic City's IA files. After exhaustive briefing and argument, the Court is firmly convinced that plaintiff should get what she originally asked for — all of Atlantic City's IA files.

Frankly, now having the benefit of a complete record the Court is at a loss to think of a good reason not to order the production of all of Atlantic City's IA files.[28] The files are

---

[28] The police officers' privacy interests are protected because a Discovery Confidentiality Order has been entered which

unquestionably relevant to plaintiff's <u>Monell</u> claim, the scope of the production is not unprecedented, and the production will help avoid and streamline future evidentiary issues and motion practice. Further, the parties' experts agree it is preferable to review all the files. Even Dr. Lentz testified that this is the preferred course of action:

> Q.  So is the best way to know exactly what is going on with Atlantic City's IA files to look at every file?
>
> A.  Oh, invariably, getting all of – all of possible realizations – I mean all of the realizations – excuse me -- of possible data is always the best[.]
>
> . . .
>
> Q. The entire population is more statistically reliable or let me – let me rephrase and use your terminology. The known population is going to me more reliable from which to draw inferences and conclusions than any stratified random sample, right?
>
> A.  Yes.

Feb. 2, 2015 Tr. 43:10-15; 63:15-20. Dr. Shane agrees.  Dec.12, 2014 Tr. 9:2-10; 47:23-48:7.

---

limits the use of the IA files to this case by a limited number of individuals who have authorized access. Further, it does not go unnoticed that while Atlantic City repeatedly claims that disclosure of its IA files will have a detrimental effect on the effectiveness of its IA process, it has yet to produce a scintilla of evidence to support this assertion. Nor has Atlantic City produced evidence that disclosure of its IA files will "chill" citizens from making internal affairs complaints.

The public interest favors the Court's ruling. The Court wholeheartedly agrees with Skibo, 109 F.R.D. 61 where the Court wrote:

> Plaintiffs' allegations of police misconduct and of the city's acquiescence in and support of the officers' illegal acts in both cases lends support to the government's interest in compelling disclosure of the documents requested. In addition to the full development of the facts and protection of the plaintiffs' civil rights, the federal government has an interest in maintaining the integrity of the state and federal law enforcement institutions. Misconduct by individual officers, incompetent internal investigations, or questionable supervisory practices must be exposed if they exist.

Full disclosure will permit plaintiff to get to the bottom of the alleged problems with Atlantic City's IA process. If there is a justifiable reason why Atlantic City's police officers, according to plaintiff, act with impunity, and why Atlantic City is subject to so many citizen complaints and § 1983 lawsuits, the public has a right to know.  Full disclosure of Atlantic City's IA files will reveal what is really happening. Given the facts before the Court, a snapshot will not do. In addition, as discussed in detail, full disclosure is also supported by the fact that Atlantic City's burdensome argument has been completely discredited. The Court understands that Atlantic City may quibble about the number of pre and post-

incident years that are encompassed within the Court's ruling.[29] However, having exhaustively examined the record and having managed the case from its outset, the Court could not be more convinced that all IA files should be produced. "[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court." In re Fine Paper Antitrust Litigation, 685 F.2d 810, 817 (3d Cir. 1982). Indeed, where there is no controlling rule a Magistrate Judge is afforded "great discretion." Reid, 34 F. Supp. 3d at 415 (citation and quotation omitted).

Atlantic City cannot "have it both ways." On the one hand, Atlantic City refuses to produce more IA files but on the other hand it wants to argue plaintiff did not review enough IA files to meaningfully evaluate its IA process. As is its right, Atlantic City can decide for itself its defense strategy. The Court will not dictate to Atlantic City how it should defend the case. However, Atlantic City must live with the consequences of its strategy. Given its insistence that it wants to argue plaintiff did not review enough IA files, all IA files must be produced.

To be sure, the Court is not ruling that in all cases municipalities must produce all of their IA files. To the

---

[29] The Court has already held that the post-incident events are relevant to proving that an unconstitutional custom exists. Groark I, 989 F. Supp. 2d at 397-98.

contrary, the Court has repeatedly said that every case is different and each case must be evaluated on its own merits. Groark I, 989 F. Supp. 2d at 399 ("Every case is different and a party's discovery requests must be evaluated pursuant to the standards set forth in Rules 26(b) and 26(b)(2)(C)."). Full production is warranted here based on a number of factors, including: (1) the case involves a police officer and department that have repeatedly been charged with excessive force and false arrest claims by citizens and litigants; (2) the offending police officer has never been meaningfully disciplined; (3) the parties' experts agree that production of all IA files will result in the most accurate and complete analysis; (4) Atlantic City refuses to compromise on the number of IA files to produce; (5) Atlantic City reserves its right to argue that plaintiff did not review enough IA files to give a qualified opinion regarding its Monell liability; (6) the production of the files will not be unduly burdensome; and (7) the production will avoid additional in limine and Daubert motions in the future.

   5.   Allocation of Costs

   Having decided that Atlantic City must produce all IA files, the Court turns to the question of who should bear the cost of the production. Ordinarily a party pays its own costs to respond to discovery. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978). Nevertheless, in appropriate circumstances

the Court may allocate costs. Most cases discussing the sharing
of discovery costs arise in the context of electronic discovery.
See, e.g., Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y.
2003); Major Tours, Inc. v. Colorel, C.A. No. 05-3091 (JBS/JS),
2009 WL 3446761, at *5-6. (D.N.J. Oct. 20, 2009). However, the
Court may impose cost sharing outside the electronic discovery
context. See Boeywaems v. LA Fitness International, LLC, 285
F.R.D. 331, 336 (E.D. Pa. 2012) ("Although by its terms [Fed. R.
Civ. P. 26(b)(2)(B)] is limited to ESI, courts are permitted to
apply similar cost allocations in cases involving extensive
production of paper discovery)); Foreclosure Management Co. v.
Asset Management Holdings, LLC, C.A. No. 07-2388, 2008 WL
3822773, at *7 (D. Kan. Aug. 13, 2008) ("a court has discretion
under Rule 26(c) to condition discovery on the requesting
party's payment of the costs of discovery"); Schweinfurth v.
Motorola, Inc., C.A. No. 05-0024, 2008 WL 4449081, at *2 (N.D.
Ohio Sept. 30, 2008) (ordering cost sharing for 1 million pages
of paper discovery).[30]

     Since the Court has determined that it will not be unduly
burdensome for Atlantic City to produce its IA files, the Court

_____

     [30]    "[T]he good-cause inquiry and consideration of the
Rule 26(b)(2)(C) limitations are coupled with the authority to
set conditions for discovery. The conditions may . . . include
payment by the requesting party of part or all of the reasonable
costs of obtaining information from sources that are not
reasonably accessible." Fed. R. Civ. P. 26 Advisory Committee
Note to 2006 Amendment.

will not order cost-sharing at this time. However, given the expected cost of production, and the well-known facts concerning Atlantic City's dire financial situation, the parties are encouraged to agree upon a reasonable cost sharing arrangement. Plaintiff's counsel has already indicated a willingness to share costs. The added benefit of requiring the parties to share costs is that it encourages the parties to come up with a discovery plan that is time and cost efficient. Boeynaems v. LA Fitness Intern., LLC, 285 F.R.D. at 331, 337 (E.D. Pa. 2012) (citation omitted). Plus, cost-sharing should remove an excuse to delay production.

As to the timing of Atlantic City's production and the possible cost-sharing arrangement, the parties shall meet and confer in good faith about the issue. If the parties do not agree, the Court will determine a production schedule. There are endless possibilities to share the cost of copying (or scanning) Atlantic City's files. For example, the parties can hire an outside company to bring its own copy machine to the ACPD and copy the IA files. The parties can also share the cost of paying a new clerical employee to copy the files. The parties can also share the cost of paying Atlantic City's existing clerical employee to copy its files.

To be clear, however, the Court will not permit Atlantic City to impose unreasonable and unnecessary obstacles to copying

54

its files. Lt. Hendricks testified that only the ACPD's clerk can copy its files. This is not correct. <u>See</u> IAPP at 43 ("[T]he law enforcement executive officer may authorize access to a particular file or record for good cause."). Absent good cause the Court sees no reason why any qualified person cannot copy the files. Further, whoever copies the files must dedicate sufficient time to the effort to complete the job in an expedient fashion. The Court will not allow the case to be unreasonably delayed.

The Court is not unmindful of the benefits that will inure to Atlantic City from this Opinion. The Court has seen time and time again how much effort Atlantic City puts into resisting discovery in its § 1983 cases without success. Given the substantial number of § 1983 cases it is defending, Atlantic City will benefit from one complete set of IA files. In the future it will not have to "reinvent the wheel" in every case as has happened so often in the past. Further, if Atlantic City's IA process is as meaningful and effective as it posits, its production should buttress and not hurt its defense. If Atlantic City allocates the cost of its production amongst its cases, the cost to each case is likely to be negligible.

In short, the Court has no hesitation in directing Atlantic City to produce all of its IA files from 2003 through December 31, 2014. The IA files are unquestionably relevant, Atlantic

City refuses to compromise on the number of files to produce, and it is not unduly burdensome to produce the files. Under the circumstances of this case, the public interest in assuring that citizens' constitutional rights are not abused by the police substantially outweighs Atlantic City's interest in keeping its IA files secret. The public has a paramount right to know what is going on and why.

<u>Conclusion</u>

For all the foregoing reasons, the Court grants plaintiff's request for production of all of Atlantic City's IA files from 2003 through December 31, 2014. The parties shall meet and confer to propose a reasonable production schedule and possible cost-sharing arrangement. An appropriate Order accompanies this Opinion.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: April 10, 2015